# Johns *versus* Davidson.

1. Title to islands lying within the river Susquehanna, or its branches, could not be acquired by actual settlement and improvement; but by the act of 6th March 1793, directing the sale of certain islands in the Susquehanna or its branches, an improver had two years to obtain a warrant and have a survey made, and in case of his neglect for that time, the island was subject to application by any other person: and though it was incumbent on the improver to state the nature of his improvement and when and by whom made, this was not necessary in the application of another who applied for the island more than two years after the improver had neglected to make application for it.

2. The boundaries of Mifflin county were fixed by the second section of the act of 19th September 1789; and the fact that an island evidently included by the act within the limits of that county, had been assessed for twenty-eight years in *Huntingdon* county, will not avail to disturb the boundary fixed by the act. If the boundary fixed by the act were *uncertain*, such assessments for a long period might be admissible to show where the line was fixed by the act; but are not admissible where the line fixed by the act, viz. the Juniata river, is known. It is a question of law.

3. Where the counties of Mifflin and Huntingdon join at the Juniata river at their southern point of junction, their respective boundaries do not extend *usque ad filum aquæ;* but the *whole bed* of the Juniata river from that point up to Jack's Narrows is in *Mifflin* county, and the islands in the river belong to the latter county.

4. The fact that the island was appraised as a part of the estate of the first improver, of which the plaintiff in right of his wife was an heir, and was sold to the defendant on the proceeding in partition, there being no evidence

[Johns v. Davidson.]

that the plaintiff directed it to be so appraised, is not evidence as to the county in which the island is situate, nor sufficient to bar the plaintiff from making application for it: nor will the occupation and cultivation of it for thirty-five years before the application give title to it.

ERROR to the Common Pleas of *Mifflin county*.

This was an action of ejectment, brought by John M. Davidson *vs.* William Johns, for an island in the Juniata river, containing about 16 acres.

Davidson showed a patent for the island, dated March 12, 1841.

The defendant Johns resisted the recovery by the said Davidson on the ground that no part of the island lay within the boundaries of Mifflin county, but that the whole island lay within the boundaries of Huntingdon county, and had always, since the formation of the county of Huntingdon, composed part of that county.

The defendant offered to prove that for a long time past, to wit, for forty years, and ever since the creation of Huntingdon county, this island had been treated as a part of the territory of Shirley township, in the county of Huntingdon—that it had always been assessed as a part of the township of Shirley, and that the owners and possessors of it had always paid taxes for it in Huntingdon county, and that no taxes had ever been assessed on it or paid for it in the county of Mifflin, and that it had never been claimed or treated as any part of the territory of Mifflin county.

This evidence the court rejected.

The defendant then proved that this island had been valued or appraised as a part of the estate of David Johns, lying in Huntingdon county, and that John M. Davidson, who had an interest in the estate of David Johns, participated in these proceedings in the Orphans' Court of Huntingdon county, in which the island was treated as lying in Huntingdon county.

The defendant then proved that the main body of the Juniata river flows between the island and the Mifflin shore, and that comparatively little water flows between the island and the Huntingdon shore. The court instructed the jury that the island lay in both counties, and that the ejectment was well brought in the county of Mifflin. To which opinion the defendant excepted.

Verdict was rendered for the plaintiff.

On the trial, on the part of the plaintiff, was offered in evidence,

January 14, 1835, application of John M. Davidson for an island in the Juniata river, Wayne township, about 18 acres, about two miles below Drake's Ferry, opposite the lands of Smith and David Johns, deceased.

Objected to, that the application does not state whether the island is improved.

Objection overruled, and defendant excepted. This was the first bill of exceptions.

14th January 1835, order of governor and board of property, read.

Island appraised 6th February 1835. Recorded 16th February 1835, 15 acres 104 perches.

20th September 1836, warrant to John M. Davidson for 15 acres 104 perches, read.

May 31, 1838, survey, 15 acres 104 perches.

March 12th, 1841, patént to John M. Davidson.

Act erecting Mifflin county referred to.

On the part of defendant, James Reed sworn:—I am the clerk of the commissioners of Huntingdon county. I have the assessment lists of Huntingdon county.

Offer to prove that this island has been assessed as a part of Shirley township, Huntingdon county, for the last forty years.

This to show that the land does not lie in Mifflin county, and is not within the jurisdiction of this court.

Objected to by plaintiff, that the assessments are not competent to prove that fact; the assessing of it in that county does not make it in that county, or the súbject of assessment.

Objection sustained, and defendant excepted. This was defendant's second bill.

Offered to prove by Henry Buckley that the island is on the Huntingdon county side of the channel.

Witness:—I have known the island since 1810; have lived on the island—worked on it. I always think the largest body of water is on the Mifflin county side of the island; the boat channel is on that side.

Cross-examined:—The island, in the broadest place, is, I suppose, 40 rods wide; cannot tell how wide between the island and the Mifflin county side. Not 100 yards from the island to the Mifflin county shore; more than 50 yards—perhaps 70 yards. From the western side of the island to the Huntingdon shore, about the same distance. Soil perhaps 5 feet above low-water mark. I think the most water is on the Mifflin side. The middle of the river is not on the Huntingdon county side.

Offered in evidence *the record* from Huntingdon county for a partition of the estate of David Johns, deceased, instituted by John M. Davidson, and claiming this land to be a part of the estate in Huntingdon county, (John M. Davidson was married to a daughter of David Johns, deceased,) and that the island was appraised as a part of the estate of David Johns; and that the island was afterwards sold to the defendant on the proceeding in partition, as a part of the estate of David Johns.

This offered to show that the plaintiff has considered it in Huntingdon county; second, to show that the plaintiff has, as one of the tenants in common of the estate of David Johns, acknowledged

[Johns v. Davidson.]

the title to be in the heirs of David Johns, and that his proceeding operates as an estoppel, and whatever title he acquired to the island by his warrant inured to the heirs of David Johns.

Withdrawn for the present.

Joseph Bowers, sworn:—I think I first knew this island in 1827. I rafted on the Juniata river. The main channel is on the Mifflin side of the island. At low-water mark the island is greatly nearest the Huntingdon side of the river, at any stage of water is nearest the Huntingdon shore—would think, at low water, is not more than 3 rods from the Huntingdon shore; at the lowest stage of water, would be 100 yards or more from the Mifflin shore. * * *

*Record* of the proceedings of the Orphans' Court of Huntingdon county again offered, to show as before, and for the same purposes.

Objected to as irrelevant, and that the island does not appear to be embraced in the proceedings from the beginning to the end of the record.

Objection sustained, and defendant excepted. This was defendant's third bill.

Offered to prove, by one of the inquest, that the inquest appraised this island as a part of the property described in the writ to part and divide—that the sheriff was there, and the inquest acted under his directions, and appraised the island, and that Davidson, the plaintiff, lived about a mile and a half off. Objected to. Objection sustained, and defendant excepted. This was defendant's fourth bill.

Defendant now offers to prove the occupation by cultivation of the land for 35 years, by David Johns, having cleared and fenced the island for the whole of that period.

This offered for the purpose of showing possession in David Johns, and that, as part of his estate, it was appraised in the inquisition held for the partition of the estate of David Johns in Huntingdon county.

Objected to, that neither the possession in David Johns *nor the record* tend to show that the island is embraced in the partition, and if they did, the whole proof would be irrelevant—that the certificate of the record is insufficient.

Court:—The application of John M. Davidson does not show that he included this island in the partition; the application excludes it, and unless it is shown that Davidson directed the island to be appraised, the possession of David Johns of the island gave no title.

Objection sustained, and defendant excepted. This was defendant's fifth bill.

Joseph Bowers:—The heaviest stream is on the Mifflin county side—would amount to two-thirds, or more, on the Mifflin side.

Cross-examined:—My attention was never called to it particu-

larly.    It is fordable on one side, but I think not on the Mifflin side.

Joseph Morrison sworn : He said, *inter alia*:—I could not say, taking a point in the middle of the island and running to a point in the middle of the river above the island, which side most of the island would be in; suppose on the Mifflin side.

Defendant now offers to prove that for twenty-eight years past, the island has been assessed as part of Shirley township, in Huntingdon county; offer to show this by the assessments of the commissioners.

This offered for the purpose of showing how jurisdiction has been exercised over this island, and to show it lies in Huntingdon county; to show that Mifflin county conceded the right to Huntingdon county.

Court :—This might be considered on a question of boundary, if, from lapse of time, it was difficult to prove the existence of the original line and its marks; but here is a river as the boundary, not alleged to be changed, but confined, opposite the island, by high banks.    The necessity for reputation, or hearsay, does not arise.

Objection sustained, and defendant excepted.    This was defendant's sixth bill.

On the part of the defendant, the following points were submitted:

1. If, from the evidence, the jury believe the island in controversy lies in Huntingdon county, then their verdict must be for the defendant.

2. If, from the evidence in the case, the jury believe the island lies nearer to the Huntingdon shore than to the Mifflin shore, the island lies in Huntingdon county.

3. That the edge of common low water in the river, is the legal shore of the river.

4. If, at low water, a greater quantity of water flows on the Mifflin side than on the Huntingdon side of the island, the island lies in Huntingdon county.

5. If the narrowest part of the river on the Mifflin side of the island is wider than the narrowest part of the river on the Huntingdon side, and the most water flows on the Mifflin side, then the island is in Huntingdon county.

6. When two counties lie opposite each other, on the same river, and there is no special reservation of jurisdiction over the river in favor of either of the counties, the territory of each county extends to the middle of the main channel of the river.

WILSON, President J., charged as follows :—This ejectment is brought to recover the possession of an island in the Juniata river. Under the provisional government of Pennsylvania, the islands in the great rivers of the State never were the subjects of appropria-

tion; the proprietors (the Penns) appropriated them to their own use by special warrants. When, by such special warrant, they had appropriated an island, it was excepted from the general proprietary estate, which was vested in the commonwealth by virtue of the act of the 27th of November 1779. This island was not so specially appropriated, and by that act became vested in the commonwealth. The commonwealth, pursuing the same policy, did not, by any law, subject the island to appropriation, either by office right or settlement; but by an act of Assembly in 1795, directed the islands in several of the rivers to be sold at public sale, or otherwise, for the best prices that could be gotten for the same, and declaring that all occupancy and every survey, claim, or pretence for holding the same islands by any other title, should be utterly void. The act of 1793 still continued the sale of islands, limiting a price under which they could not be had, and provided for the appointment of appraisers, to ascertain their value, on the application of a purchaser, and giving a pre-emption right to improvers for two years from the passage of the act. The right of purchase granted to improvers was confined to improvers cultivating the land when the act passed. The object of the legislature always was to sell islands for the best price; and by the act of 1793, to prefer an improver, if he applied within the two years; but if he did not, then to grant it to the first applicant, subject to the regulations and conditions contained in the act. An occupation by cultivating an island for any number of years, where the commonwealth has not parted with her interest, cannot make title to the occupant. The limitation does not run against the commonwealth, and such occupation does not prevent any citizen from applying and purchasing from the commonwealth an island not previously applied for. The only indulgence given to occupants was for two years from the passage of the act of 1793. In this case, from any thing that appears from the evidence, John M. Davidson had the right to make the application he did, and to purchase from the commonwealth; and the application, appraisement, warrant, survey, and patent, given in evidence, make him a good title to the island, and one upon which he will be entitled to recover in this case, provided you shall find that the island for which he took out his warrant is within the boundaries of this county. The territory composing Huntingdon county was erected into a separate county before the erection of Mifflin county. Mifflin county was erected in 1789, and was to include the lands lying within bounds and limits described in the act, and among them is the following description from where it runs from Franklin county—"thence along the said line to the Huntingdon county line; thence along the said line to the Juniata river; thence up the said river to Jack's Narrows." It is in the river, at this line of boundary, the island in dispute is situated. We do not think that the jurisdiction of Huntingdon

2 T

[Johns *v.* Davidson.]

county, by this division line, is limited to the edge of the river, but that it will extend to the middle of the river; and we mean by this a line equally distant from either shore; and in determining the question, which is one for you, of whether this island is in Mifflin or Huntingdon county, you will not adopt as the line the middle of the heaviest volume of water flowing past this island, but a line equally distant from the shores; and this you will determine from the testimony you have heard from the witnesses in relation to its location and situation, in reference to the shores, and spread of water between the island and main shores.

The first and second points proposed on part of defendant, he answered in the affirmative.

To the 3d :—This, as a general legal principle, is correct.

To the 4th :—For many purposes, the beach on either shore of a river constituting a county line, will belong to the county in which it is situated; but the main channel of rivers may and do often change, and the line adopted for the division by the act of Assembly fixing the boundary, will not always change with a change of the channel. It may deepen it, so as to throw the greater quantity of water on a side of an island where it did not flow when the division line was adopted; and we refuse to answer this point as requested.

To the 5th :—There may be particular parts of the channel, on one side or other of the island, narrower than the narrowest part of the channel on the opposite side, and the most water flow through the widest channel, without determining the line between the counties; and, as a whole, we refuse to answer this point as requested.

To the 6th :—If, by the main channel in this point, is meant the heaviest volume of water, we refuse to answer the point as requested, but say to you that the jurisdiction of counties so situated will extend to a centre line of the river, equally distant from either shore.

If you find that the island is on the Huntingdon side of a centre line between the shores of the opposite sides of the river, your verdict should be for the defendant; if you find the island, or a considerable portion of it, on the Mifflin side of such line, the plaintiff will be entitled to your verdict.

To this opinion both parties except, as well as to the answers to the points, &c.

It was assigned for error:

1. The court erred in receiving in evidence the *application* in defendant's first bill of exceptions.

2. The court erred in refusing to permit defendant below to prove that the island lay exclusively in Huntingdon county, and that no part of it ever was assessed in Mifflin county, as set forth in defendant's second bill of exceptions.

[Johns v. Davidson.]

3. The court erred in rejecting the copy of the record, as set forth in defendant's third bill of exceptions.

4. The court erred in rejecting the evidence of the witness who was one of the jury of inquest on the estate of David Johns, as set forth in defendant's fourth bill of exceptions.

5. The court erred in rejecting the evidence offered by defendant, as set forth in his fifth bill of exceptions.

6. The court erred in rejecting the evidence as set forth in defendant's sixth bill of exceptions.

7. The court erred in the charge, in saying—"The line of Huntingdon county extends to the middle of the river; and by this we mean a line equally distant from either shore; and in determining the question, which is one for you, whether this island is in Huntingdon or Mifflin county, you will not adopt as the line the middle of the heaviest volume of water flowing past the island, but a line equally distant from the shores; and this you will determine from the testimony."

8. In saying—"If you find that the island is on the Huntingdon side of a centre line between the shores of the opposite sides of the river, your verdict should be for the defendant; if you find the island, or a considerable portion of it, on the Mifflin side of such line, the plaintiff will be entitled to your verdict."

The court erred in answering the 4th, 5th, and 6th points of defendant's counsel.

The case was argued by *A. W. Benedict* and *Fisher*, for the plaintiff in error.—The material matter as to which it was alleged error existed, was, that the court erred in holding that the island in question, or any part of it, lay in the county of *Mifflin*.

As to *county* line, evidence of usage may be given to support title: 3 *W. & Ser.* 379, Beale v. Patterson. As to the law arising under the several assignments, the following authorities were cited: 3 *Revised Statutes of New York*, 3d ed.; 1 *id.* 78–9; 3 *Kent's Com.* note, 427–430. See Wright v. Howard, 1 *Sim. & Stewart*, 190; Deerfield v. Orn, 17 *Pick.* 41; Star v. Child, 20 *Wend.* 149; 5 *id.* 423; 6 *Cow.* 518, note a; 6 *id.* 546; 12 *Johns. Rep.* 252; Clement v. Carlton, 2 *New Hamp. Rep.* 269; 2 *id.* 371–372. See 5 *Wheat.* 381; 4 *id.* 339; 7 *Cranch* 34; 9 *id.* 173.

See *Woolrich on Waters*, 38; *Hale de jure maris*, 6; *Fleta*, lib. 3, cap. 2, 446; 2 *Bl. Com.* 261.

It was contended that an island in a river, belongs to that shore between which and the island the *least* portion of the stream flows: 10 *Wend.* 260; 6 *Cow.* 544; 3 *Kent* 430; 14 *Mass.* 149; 5 *Wheat.* 374–81.

*Parker*, for defendant.—Islands were never the subject of improvement right till 1793. The act limited the application of an

improver to two years; after that period he had no preference, and the other party had the right to apply for the island.

The act of 1785 includes islands in the Juniata, as a branch of the Susquehanna. The plain words of the act erecting Mifflin county, clearly indicate the western shore as her true boundary. If this be so, the plaintiff has no cause of complaint: 2 *Smith's Law*, 493–4; sec. 2, act of 19th September 1789.

The opinion of the court was filed, July 23, by

COULTER, J.—The application does not describe the improvements. But this, although it is required in the statute, was designed to answer a particular purpose, to wit, to inform the government whether any one was entitled to the preemption under the act of Assembly permitting the appropriation of islands. In this case, the two years during which the preemption was to run had expired long before the application; and therefore, as regarded the commonwealth, it was of no moment that they should be described, because the island was to be valued by persons appointed, who would of course take into consideration the value of the improvements. The commonwealth, after valuation of the island, and after all the preliminary steps except the one of describing the improvements in the application, had been duly taken, granted a patent to Davidson in March 1841. This closed up the matter, and, as far as the commonwealth was concerned, vested the title in the plaintiff below; and this disposes of the first bill of exceptions. The second bill covers exceptions to evidence of assessments of the island in dispute, by the authorities of Huntingdon county offered for the purpose of showing that the island did lie in Huntingdon county, and that therefore the court in Mifflin county had no jurisdiction of the cause. But the lines and boundaries of counties are fixed by statute, and the power is not given to the commissioners or other officers of a county to restrain or expand those boundaries. Whether the assessments were made for a long or short period is of little importance, because local usage or trespass can never repeal positive statutory law. The third and fourth bills of exceptions are disposed of by the same rule and reason which governs the second. The proceedings of the Orphans' Court of Huntingdon county, even if they were properly certified, would not conduce to establish the line of Huntingdon county, or to restrain or limit the line of Mifflin county or oust the jurisdiction of its courts.

As to the fifth bill of exceptions, it may be sufficient to say, that islands have been, from the earliest settlement of the State subject to different rules as to the acquisition of title, than those which applied to the main land. The improvement therefore on the island, being merely an extension of the improvement of Johns on the mainland in Huntingdon county, vested no title in the said Johns to the island. The law of actual settlement and improvement was never extended

[Johns *v.* Davidson.]

to islands. The sixth bill of exceptions to evidence is closely allied to those considered already. Testimony of assessments in Huntingdon county for twenty-eight years might perhaps be admitted, if the actual location of the line was uncertain, had been obliterated, or had never been surveyed or marked. In such case the assessments for a long period of time might conduce, in the absence of better evidence, to show where the line originally was. But here the line is well known, neither defaced nor shifted by time or accident. It is the Juniata river. And the real question is whether the statute makes the southern bank or shore or the middle of the river the true boundary between Mifflin and Huntingdon counties, as far as it is the boundary. That is a question of law.

Mifflin county was erected out of Cumberland and Northumberland counties. At that time Mifflin embraced the county of Juniata within its limits, which was since erected into a separate county; but that affects not the question here, as the conflicting jurisdiction is between Mifflin in its present limits and Huntingdon. The line of old Mifflin crossed the Juniata and took in a large portion of territory on the eastern and southern side of it; and then intersecting the line of Huntingdon county on the southern side of the river, the statute proceeds as follows : " Thence along the said Huntingdon county line *to* Juniata river, thence up said river to Jack's Narrows," &c. Between Jack's Narrows and where the line of Mifflin strikes the river, lies the island in dispute. It was contended here, and also in the court below, that the middle of the stream was the true boundary ; and the court below seemed to be of that opinion, but left it to the jury to say whether part of the island was not on the side nearest the Mifflin shore ; and that if that was the case, the Mifflin county court had jurisdiction, under a statute which prescribes that when land lies partly in one county and partly in another, either county has jurisdiction to try title to the whole. But we are of opinion that the jurisdiction of Mifflin county over the island does not depend upon so uncertain a line. We are of opinion that the whole bed of the river and the islands in it, from where the line strikes the southern shore of the stream up to Jack's Narrows, is in Mifflin county.

· By the common law, where a river is used as the boundary in a grant, it is used to the centre or middle of the stream, and to that extent the title or fee attaches, so that the proprietor of each bank is the owner of half the land covered by the water, saving to the public the right of highway. And islands in the middle of the stream or close to the shore of either side follow the same rule and are governed by it. This rule has been adopted in several of the states, New York among the number. In the case of Canal Commissioners *v.* The People, 5 *Wend.* 423, it was held that by the rule of the common law which was adopted in that state, grants of lands, bounded on rivers above tide water, extended *usque ad*

[Johns *v.* Davidson.]

*filum aquæ*, including beds of rivers and islands, but subject to the right of the public to use the waters as a highway.    But this rule was never adopted in Pennsylvania.    By the act of 1785, appropriating lands in the new purchase, islands were excepted from its provisions, and they were to be sold by special order of the government; and by the act of 1793 the mode of disposing of islands in the Susquehanna and its branches is provided for.    By a late act of Assembly the land officers were authorized to issue warrants for land under the beds of certain western rivers, and many warrants. were issued under the act.    In Pennsylvania, wherever a stream is navigable, and it is made the boundary of a grant by the State, the title passes to low-water mark, but no farther.

The common-law principle of *usque ad filum aquæ* is not applicable to the large streams of this State which are navigable, although there be no flux or reflux of the tide; the beds of such rivers belong to the commonwealth : Carson *v.* Blayer, 2 *Bin.* 475.    It is only to small streams not navigable that the principle of *usque ad filum aquæ* applies in Pennsylvania : 8 *Watts* 477.    The line therefore of Mifflin county being designated by the statute as coming to the Juniata river, on the southern side of the Juniata, or the side contiguous to Huntingdon, and thence up the river to Jack's Narrows, took in the whole bed of the river to low-water mark; the line did not recross the river until it reached Jack's Narrows.

Although, then, Huntingdon county, opposite the island in dispute, comes up to the river, it goes no farther than *low-water mark;* and the whole of the island is in Mifflin county, whose court had unquestionable legal jurisdiction of the cause.    This island was the property of the State, and remained open to appropriation under the terms of the act of 1793.    That act expressly recognises cases where improvements have been made; and provides that in any application for the appropriation of an island, the applicant shall state whether any improvement has been made, and also the nature of the improvement, and when and by whom made.    And no warrant shall issue directing any island thus improved to be surveyed, except in favor of the person who has made such improvement, or in favor of his heirs or assigns for the term of two years after passing that act ; and providing that after the expiration of that time, warrants shall issue for such improved island in favor of any person or persons who shall first apply for the same.

The warrant in favor of Davidson was not issued until long after the expiration of two years from the date of the act of 1793, to wit, in 1835.    If the improver, his heirs or assigns, chose to slumber over the privilege accorded to them till it was too late, the fault is their own.    The dominion of the State was not thereby lost, and they had a right to grant it to whom they pleased.

Judgment affirmed.