# Bayzer & Shepherd v. McMillan Mill Co.

*Action to recover Damages for Obstruction of a Stream.*

1. *Navigable stream; what necessary to constitute one.*—A fresh water stream, above tide water, is navigable and a public highway when, and only when, it is susceptible of being used in ordinary condition for a highway of commerce, over which there may be trade, travel, transportation or valuable floatage; but it is not necessary that the ordinary state of the water should render the stream navigable continuously at all seasons of the year.

2. *Same; same.*—Where, in an action to recover damages for the obstruction of a navigable stream, the evidence shows that the stream alleged to have been obstructed was only capable of being used for the floatage of logs for a short period during the spring and winter freshets, and there was no evidence concerning the character of the forests adjacent thereto, or the number of people engaged in the logging business, or that boats had ever navigated its waters, or that it was exempt from government survey as a public stream, such stream, as a matter of law, is not a navigable or public stream, for the obstruction of which the defendant would be liable to the plaintiff in such an action.

APPEAL from the Circuit Court of Conecuh.

Tried before the Hon. JOHN P. HUBBARD.

This was an action brought by the appellants, Bayzer & Shepherd, against the appellee, the McMillan Mill Company.

The complaint seeks a recovery of damages from the defendant, for having obstructed Pigeon Creek, a fresh water stream, running through portions of Butler, Covington and Conecuh counties in this State, and empty-

ing, as the proof shows, into Sepulga river. It is alleged, and the cause of damage is rested upon the fact, that said creek was, at the time of the damage complained of, and for many years prior thereto had been, a common and public highway for the purpose of floating timber, lumber and logs in the counties through which it flowed, and used by all the people who so desired for such purposes, this being the only practicable way of getting such products to market; that plaintiffs attempted to float a raft of their timbers down said creek sometime from the 20th to the 25th of November, 1889, and the defendant "well knowing the premises, wrongfully, injuriously, negligently and carelessly, shut, closed and obstructed said public highway, at the places aforesaid [named in the complaint] by throwing therein a large number of loose logs which formed themselves into and thereby created obstructions known as "jacks or jams," at the places aforesaid, whereby the navigation of said stream, for the purposes aforesaid, was completely destroyed for a long time, to-wit, from or about the 20th day of November, 1889, to or on the 25th of December, 1890." Special damages by loss of timbers by plaintiffs, on account of these obstructions, were also claimed.

The evidence shows, without conflict, that Pigeon Creek is a small stream running through portions of the counties mentioned in the complaint, and empties into Sepulga river; that its average width is 40 or 50 feet; that some half mile from its mouth, it has a natural obstruction, in the shape of a jump or fall, of some three or four feet; that the creek is a crooked one, quite deep in some places and very shallow at others, and requires a rise in its natural flow of water of from 5 to 7 feet to put it in condition for floating and rafting logs and timbers; that it rises and falls rapidly, and its rises occur from the heavy rains in the spring and winter, so that, ordinarily, there are seasons in the year from 30 to 90 days, in which rafting may be done; that in the years 1889 and 1890 there were only a few days, when rafting could be done, on account of the absence of the periodical rains—those years being very dry ones; and that said creek had been used for over 30 years, by persons who desired to do so, in floating their logs and timbers out to market.

[Bayzer & Shepherd v. McMillan Mill Co.]

The opinion renders a fuller statement of the facts unnecessary. There was judgment for defendants, and plaintiffs appeal.

FARNHAM & CRUM and GAMBLE & POWELL, for appellant, cited *Walker v. Allen*, 72 Ala. 456; *Lewis v. Coffee County*, 77 Ala. 190; *Morrison Bros. v. Coleman*, 87 Ala. 655.

STALLWORTH & BURNETT and JAMES M. DAVISON, contra, cited *Walker v. Allen*, 72 Ala. 456; *Rhodes v. Otis*, 33 Ala. 578; *Carey v. Ellis*, 30 Ala. 725; *Olive v. State*, 86 Ala. 88; *Harold v. Jones*, 86 Ala. 274; *Morrison Bros. v. Coleman*, 87 Ala. 655; *Lewis v. Coffee County*, 77 Ala. 190.

HARALSON, J.—The question as to what constitutes a navigable stream, as contradistinguished from a private one, has from an early day been the subject of many decisions of this court. This stream is above tide water. In determing the navigability of such streams, the test is to be found in their navigable capacity. As was said in *The Daniel Ball*, 10 Wall. 557, "Those rivers must be regarded as public, navigable rivers in law, which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water."

In *Morrison v. Coleman*, 87 Ala. 657, which is one of our latest adjudications on the subject, this court, after a review of the authorities, announced its conclusion as follows: "We declare, as the result of our own rulings and of the weight of authority, that a fresh water stream above tide water is navigable and a public highway, when, and only when, it is susceptible of being used, in ordinary condition, for a highway of commerce, over which there may be trade, travel, transportation, or valuable floatage. We are not to be understood as affirming, that to be a navigable stream or public highway, it must be susceptible of the enumerated uses for the entire year. Most inland streams contain a greater volume of water in winter than in summer. Our precise meaning is, that for a season or considerable part of the year, it

must contain that depth of water, which fits it for such transportation. It excludes all those streams which have the requisite volume of water only occasionally, as the results of freshets, and for brief periods, as unnavigable, and private property." Again it was said in *Rhodes v. Otis*, 33 Ala. 578 : "In determining the character of a stream, inquiry should be made as to the following points : whether it is fitted for valuable floatage ; whether the public or only a few individuals are interested in transportation ; whether any great public interests are involved in the use of it for transportation ; whether the periods of its capacity are sufficiently long to make it susceptible of use beneficially to the public ; whether it has been previously used by the people generally, and how long it has been so used ; whether it was meandered by the government surveyors or included in the surveys; whether, if declared public, it will probably in future be of public use for carriage. And in the application of these inquiries to the facts of the case, it is to be remembered that the *onus probandi* is upon the party claiming that the stream above tide water is public." In the case last cited, many reasons are stated in the interest of the public, why such streams should not be held to be public : "Every mill-dam on any of those creeks, every bridge over them, every water gap, and every foot-log, could be treated as a nuisance, at the option of any individual who might think proper to go upon the stream and prepare a raft of timber to await a rise from a freshet; to float his raft down ; and he might sue the owners of mills for all damage sustained in consequence of the interference of the same."

Again, it has been held, that a creek, not affected by the ebb and flow of the tide, which had never been declared a public highway by legislative authority, and was not treated as a navigable stream by the United States surveyors, is not navigable or public, though during twenty years, keel-boats, loaded with cotton, had been several times floated, and timber and lumber rafted down it during the winter season, but during the summer, there was not sufficient water for these purposes.— *Ellis v. Carey*, 30 Ala. 725 ; *Lewis v. Coffee County*, 77 Ala. 192.

When the facts are ascertained, whether a stream is navigable or public is a question of law. In this case,

[Jinwright *et al.* v. Nelson.]

the facts bearing on this inquiry are not in conflict. It does not appear that Pigeon Creek has ever been utilized for any other kind of transportation of commodities for market, other than saw logs and lumber, and this at spasmodic and occasional periods in the winter or spring as the result of freshets; or that for any considerable part of the year, did the depth of its water fit it for such transportation; or that any boats, keels or lighters, propelled by steam, sail, pole or oar had ever navigated its waters; or that it was exempt from the public surveys of the Government, as a public stream, or declared to be such by the legislature of the State. Nor was there any evidence of the character and extent of the forests in the country through which it ran, and the number of people engaged in the mill or rafting business, so that it might be seen to what extent it had been or might be utilized in the future for purposes specified in the complaint. There does not appear that there was ever, at any time, such a state of facts as, under the foregoing and our other adjudications, would authorize us to declare this to be a public or navigable stream.—*Bullock v. Wilson*, 2 Port. 436; *Peters v. N. O., M. & C. R. R. Co.*, 56 Ala. 528; *Walker v. Allen*, 72 Ala. 457; *Sullivan v. Spotswood*, 82 Ala. 163; *Harold v. Jones*, 86 Ala. 274.

The plaintiffs based their recovery on the allegation, that this creek was, at the time of the damage complained of, a common and public highway for the purposes specified. Their right of recovery, in any event, is rested on their making good this averment, which they have failed to do. The general charge for defendant, if requested, might have been well given; and since plaintiffs, in no event, could recover, it is unnecessary to consider the errors assigned. If any existed, they were harmless.

Affirmed.