## STATE OF MISSOURI *v.* STATE OF KANSAS.

### IN EQUITY.

No. 6, Original. Argued February 23, 1909.—Decided March 22, 1909.

The boundary line between Missouri and Kansas is and remains, not-withstanding its shifting position by erosion, the middle of the Missouri River from a point opposite the middle of the mouth of the Kansas or Kaw River.

The act of June 7, 1836, c. 86, 5 Stat. 34, altering the western boundary of Missouri, is to be construed in the light of extrinsic facts; and, as so construed, its object was not to add territory to the State but to sub-stitute the Missouri River as a practical boundary, so far as possible, instead of an ideal line along a meridian.

The result of this decision is that an island in the Missouri River west of the centre of its main channel, as that channel now exists, belongs to Kansas, notwithstanding such island is east of the original boundary line of Missouri.

THE facts are stated in the opinion.

*Mr. Elliott W. Major,* Attorney General of the State of Missouri, and *Mr. Hunter M. Meriwether,* with whom *Mr. Henry M. Beardsley* was on the brief, for complainant:

There is no dispute as to the location of the western boundary of Missouri for the two and one-half or three miles north of the mouth of the Kansas River, prior to 1837. See constitution of Missouri of 1820. The west line of the State was therein laid down as a meridian line passing through the mouth of the Kansas River.

The maps in evidence show that in 1836–37 the Missouri River had moved to the east so far that the first two and one-half miles of the old west boundary line surveyed by Sullivan were in the river.

On March 28, 1837, the land lying between the old state boundary and the Missouri River was added to the State, and

no change was made in the boundary line except where land lay between the old state-line and the river. Act of June 7, 1836, c. 86, 5 Stat. 34. It is clear from this act that the boundary of the State was not changed except where there were lands lying between the old boundary and the Missouri River, in which case the boundary was *extended* to the river. Since, therefore, the old boundary line was already in the stream for the first two and one-half miles north of the mouth of the Kansas River, no lands were added there and no change of boundary there took place.

There is no evidence to support the contention that Missouri and Kansas have by a long course of conduct regarded the shifting channel of the Missouri River over these two and one-half miles as the border line between the States rather than the true north and south line. It requires the consent of the States and Congress to change a state boundary; so no change could be made without the concurrent action of all three sovereignties. But there is no evidence that the States have agreed upon any other than the true boundary. Kansas in framing her constitution made her east line in terms "the west line of the State of Missouri." Much stress was by Kansas at the hearing put upon the language of the several statutes of the State of Missouri giving the boundaries of the counties of Platte and Clay and Jackson in Missouri and of the State of Kansas giving boundaries of the counties of Wyandotte and Johnson in that State. The legislative acts can in no wise be regarded as attempts to define the boundaries of the State. Such boundaries could not be so defined. They, on the other hand, give the boundaries of these counties with reference to the land as it at the time lay. The state line was in the Missouri River. There was no desire to take account, in fixing county boundaries, of land lying then within the river.

The determination of the true line as the western boundary of Missouri, at the point in question, depends entirely upon the construction of the terms of the act of June 7, 1836, extending western boundary to the Missouri River. Missouri, by an

amendment to its constitution, adopted the line thus established but it did not cede or waive its rights of soil and jurisdiction over any portion of its original territory. It is established by the proof that at the point in dispute the western boundary of the State was already in the Missouri River.

The rule is that where a power possesses a river and cedes the territory on the other side of it, making the river the boundary, that power retains the river, unless there is an express stipulation for the relinquishment of the rights of soil and jurisdiction over the bed of such river. *Howard* v. *Ingersoll*, 13 Howard, 381.

If there was anything doubtful or indefinite in the language of the act of June 7, 1836, or in the line as established by it, the subsequent acts of the parties affected thereby as well as local conditions determine a proper construction of what was meant by the act, but the language, itself, is plain and no other assistance is needed. *Alabama* v. *Georgia*, 24 How. 505.

Mr. *F. S. Jackson*, Attorney General of the State of Kansas, Mr. *John S. Dawson* and Mr. *C. C. Coleman*, for defendant, submitted:

The act of 1836 extending the jurisdiction of the State of Missouri over the lands between said State and the Missouri River, and extending the western boundary of said State to the Missouri River, was an authoritative establishment of the boundary line of that State to the meridian line of the channel of the Missouri River from the mouth of the Kansas River north to the northern boundary of the State. See Memorial, General Assembly of Missouri, approved January 15, 1831; *St. Joseph R. R. Co.* v. *Devereux*, 41 Fed. Rep. 14.

The State of Missouri, having accepted such determination of its boundary and all of the officials and people of the State having acted in accordance therewith since 1836 until the present time, and her sister States of Kansas and Nebraska having also acted on such understanding, such boundary line of the State of Missouri became fixed on the thread of the

Missouri River channel at all. points above the mouth of the Kansas River, and such boundary cannot now be questioned by the State of Missouri.

Where a river is declared to be the boundary between States, if such river suddenly change its course or desert the original channel as the result of a great flood or what is commonly known as an avulsion, the boundary between such States remains in the middle of the deserted river bed, but if the river change imperceptibly, from natural causes, the river as it runs. continues to be the boundary between the two States. *Cooley* v. *Golden*, 52 Mo. App. Rep. 229; *Iowa* v. *Nebraska*, 143 U. S. 359.

Where a river is the boundary-line between two States, the jurisdiction of said States is concurrent over the channel of the river to the meridian line of said channel, but where an island arises and exists on the bed of said river and the main channel of the river flows to one side only of the island, such island is within the jurisdiction of the State nearest to which it is located. *McBaine* v. *Johnson*, 155 Missouri, 203; *East Omaha Land Co.* v. *Hanson*, 117 Iowa, 97; *S. C.*, 90 N. W. Rep. 706; *De Long* v. *Olsan*, 63 Nebraska, 331; *S. C.*, 88 N. W. Rep. 514.

Mr. Justice Holmes delivered the opinion of the court.

This is a bill to establish the western boundary of the State of Missouri for a short distance above Kansas City in that State. The object of Missouri is to maintain title to an island of about four hundred acres in the Missouri River, now lying close to Kansas City, Missouri, and Kansas City, Kansas. The State of Kansas claims the same island by answer and what it terms a crossbill. A few words will explain the issue between the parties. When Missouri was admitted to the Union its western boundary at this point was a meridian running due north. There was land between a part of this line and the Missouri River. By treaty with the Indians and act

of Congress on the petition of Missouri, that State was granted jurisdiction over such land and its boundary was extended to the Missouri River. Since that time the river has been moving eastward by gradual erosion, and at the place in controversy has passed to the east of the original line. The land in question lies to the east of the line and the claim of Missouri is that, whatever the change in the river, its jurisdiction remains to that line.

Missouri fortifies its claim by an allegation that the line at the place in controversy never was changed. According to the bill, the line as surveyed began at a point on the left bank of the Missouri River, opposite the mouth of the Kansas or Kaw, for two miles and a half "practically conformed with the left bank of the Missouri," and by the shifting of the stream was in the river when the act of Congress was passed, so that there was no land to be added there, and the original boundary remained. Kansas denies that the original line conformed to the left bank of the river, and says that even if Missouri is right with regard to the facts, the result of the change was to make the Missouri River the boundary between the States from the north to the point where the Missouri and the Kansas meet.

To decide the case it is necessary to construe the laws by which the boundary of Missouri was changed. The first step to that end was a memorial of the General Assembly of Missouri to Congress, dated January 15, 1831. The sum of it is this. Many inconveniences have arisen from the improvident manner in which parts of the boundaries have been designated. When the state government was formed the whole country on the west and north was a wilderness and its geography unwritten. The precise position of that part of the line passing through the middle of the mouth of the Kansas River, which lies north of the Missouri, is unknown, but it is believed to run almost parallel with the course of the stream, so as to leave a narrow strip of land varying in breadth from fifteen to thirty miles. Great calamities are to be feared from the Indians on

the frontier. Therefore it is necessary to interpose, "whenever it is possible, some visible boundary and natural barrier between the Indians and the whites." The Missouri River will afford this barrier "by extending the north boundary of this State in a straight line westward, until it strikes the Missouri, so as to include within this State the small district of country between that line and the river." There is more, but the main point of the memorial is to secure a natural barrier between Indians and whites, and, in addition, easier access to "the only great road to market." A few square miles, more or less, of savage territory were of no account, but the object was to get the river for a bound.

There was a report to the Senate on April 8, 1834, which adopted the foregoing reasons, and recommended making the Missouri River "the western boundary to the mouth of the Kansas River." Senate Doc. No. 263, 23d Cong. 1st Sess. On February 12, 1836, there was a report to the House of Representatives on the same subject. It referred to a bill that had been reported, authorizing the President to run the boundary line, and mentioned that the bill had been amended by directing the line to be run from the mouth of the Kansas River up the Missouri River, etc. It stated that the Indian title to the lands in question might be extinguished and ought to be, because those lands ought to form part of the State of Missouri. As a reason it mentioned that when Missouri was admitted into the Union it was expected that other States would be formed on the west, in which case the use of the Missouri would have been equally convenient, whether it was the border line or not; since then, however, the Indians had been located on the frontier, thus hampering access to the river. As a final argument it added that to make the river the boundary would be for the advantage of both the Indians and the whites. In conclusion, "to carry into effect the ultimate object of the resolution," it reported "A Bill to extend the western boundary of the State of Missouri to the Missouri River." H. R. No. 379, 24th Cong. 1st Sess. This bill was passed, and became the act of Congress

on which this controversy turns.. It provides that "when the Indian title to all the lands lying between the State of Missouri and the Missouri River shall be extinguished, the jurisdiction over said lands shall be hereby ceded to the State of Missouri, and the western boundary of said State shall be then extended to the Missouri River." These are the only material words. Act of June 7, 1836, c. 86, 5 Stat. 34.

In anticipation of the action of Congress the constitution of Missouri was amended as follows: "That the boundary of the State be so altered and extended as to include all that tract of land lying on the north side of the Missouri River, and west of the present boundary of this State, so that the same shall be bounded on the south by the middle of the main channel of the Missouri River, and on the north by the present northern boundary line of the State, as established by the Constitution, when the same is continued in a right line to the west, or to include so much of said tract of land as Congress may assent." Amendment ratified at the Session of 1834–5, Article II, § 4. Mo: Rev. Sts. 1856, p. 91. Then, on December 16, 1836, the State assented to the act of Congress by "An Act to express the assent of the State of Missouri to the extension of the western boundary line of the State." Laws 1st Sess. 9th Genl. Assembly, p. 28; and, on January 17, 1837, a copy was transmitted to Congress by the President. Meantime, on September 17, 1836, a treaty was made with the Indians, in which they expressed their belief in the advantage of a natural boundary between them and the whites and released their claims. Indian Affairs. Laws and Treaties. Compiled by Kappler, 1904, p. 468. On March 28, 1837, the President, by proclamation, declared that the Indian title to lands had been extinguished, in pursuance of the condition in the act of Congress, and the act went into full effect. 5 Stats. 802. Appendix No. 1.

Whatever might be the interpretation of the act taken by itself and applied between two long settled communities, we think that the circumstances and the history of the steps that led to it show that the object throughout was that expressed

by the memorial; as we have said, not to gain some square miles of wilderness, but to substitute the Missouri River for an ideal line as the western boundary of the State, so far as possible, that is from the northern boundary to the mouth of the Kaw. That this was understood by Missouri to be the effect of the act is shown by a succession of statutes declaring the boundaries of the river counties in this part. They all adopted the middle of the main channel of the river; beginning with the act that organized the county of Platte, approved December 31, 1838, Mo. Laws, 1838, pp. 23–25, and going on through the Revised Statutes of 1855, p. 459, § 12 (Clay), p. 466, § 33 (Platte), p. 478, § 65 (Jackson), etc., to 2 Revised Statutes, 1879, ch. 94, §§ 5177, 5198 & 5237. The construction is contemporaneous and long continued, and we regard it as clear. It is confirmed by the cases of *Cooley* v. *Golden,* 52 Mo. App. 229, and *St. Joseph & G. I. R. Co.* v. *Devereux,* 41 Fed. Rep. 14, both of which cases notice that the act extended the boundary to the river, and not merely to the bank.

It follows upon our interpretation that it is unnecessary to consider the evidence as to precisely where the line as surveyed ran from opposite the mouth of the Kansas or Kaw. If the understanding both of the United States and the State had not been a wholesale adoption of the river as a boundary, without any niceties, still, as the cession "to the river" extended to the center of the stream, it might be argued that even on Missouri's evidence there probably was a strip ceded at the place in dispute. But from the view that we take such refinements are out of place. The act has to be read with reference to extrinsic facts because it fixes no limits except by implication. We are of opinion that the limit implied is a point in the middle of the Missouri opposite the middle of the mouth of the Kaw.

*Decree for the defendant.*