[Tallassee Falls Mfg. Co. v. The State.]

# Tallassee Falls Mfg. Co. *v.* The State.

### *Tax Assessment.*

(Decided February 2, 1915. Rehearing denied April 6, 1915.
68 South. 805.)

1. *Navigable Waters; Boundaries; High Water Mark.*—Under the common law, the boundaries of lands lying upon navigable rivers, in which the tide ebbs and flows extend only to high water mark.

2. *Same.*—A conveyance of land bounded upon a river in which the tide does not ebb and flow, but which is navigable in fact, conveys title to low water mark.

3. *Waters and Watercourses; Non-Navigable; Boundaries.*—Where lands are bounded by non-navigable streams, a conveyance having such stream as a boundary extends to and comprises the bed of the stream to the center thereof.

4. *Counties; Boundaries; New Counties.*—The rule with respect to conveyances of land bounded by navigable or non-navigable streams, being dependent upon the rights of the sovereign as against individuals, is not controlling in the formation of new counties; where the reason of the rule ceases, the rule itself ceases.

5. *Same.*—Where a new county was formed from portions of other counties, and the boundary as to one of such counties was described as "all that portion of Tallapoosa county south of the township line dividing township 20 and 21, and west of the Tallapoosa river," Tallapoosa county retained title to the river to the low water mark on the west shore.

6. *Same; Boundaries; Evidence.*—The fact that the officers of two counties have for a long period of time officially recognized a certain line as to boundary between such counties is not conclusive as to the true boundary thereof.

7. *Evidence; Judicial Notice; Navigable River.*—The courts take judicial notice that the Tallapoosa river is navigable as far as Tallassee.

8. *Same; Official Act.*—The courts will take judicial notice of the contents of the published volumes of the report of the U. S. Surveyor.

9. *Navigable Waters; Policy of State.*—It is the declared policy of the state to regard as navigable all rivers reported to be navigable by the U. S. Surveyors.

APPEAL from Elmore Circuit Court.

Heard before Hon. W. W. PEARSON.

Proceedings by the county of Elmore in the name of the State to assess the property of the Tallassee Falls Manufacturing Company as being partly within the

county of Elmore. From a judgment sustaining the assessment the Tallassee Falls Manufacturing Company appealed. Reversed and remanded.

(This judgment of the Court of Appeals was reversed and remanded by the Supreme Court upon a review of the same by certiorari, in which an opinion was written, and will be found reported in 194 Ala., and 69 South. 589.—Reporter.)

J. M. CHILTON, H. N. RANDOLPH, and ED S. WATTS, for appellant.

H. R. GOLSON, and HILL, HILL, WHITING & STERN, for appellee.

THOMAS, J.—This case originated in a proceeding by the county tax commissioner of Elmore county, Ala., to assess for taxation for the year 1913, as escaped, certain property belonging to the appellant (the Tallassee Falls Manufacturing Company), which constitutes that part of its bridge and dam that lies or is located in the Tallapoosa river between the middle of the stream and the west bank thereof, opposite the town of Tallassee. The commissioner's court of Elmore county sustained the assessment, and a like result followed in the circuit court of Elmore county on appeal there from the order of the said commissioners' court. From the latter judgment (the judgment of the circuit court), which was predicated upon an agreed statement of facts that will be set out by the reporter, this appeal is prosecuted, by which it is sought to have determined only one question, and that is: What is the boundary line between Elmore and Tallapoosa counties? Is it the middle of the stream of the Tallapoosa river or the west bank thereof at low-water mark? If. the former, then it is conceded that the property in question is subject

to taxation, and was properly assessed in Elmore county. If the latter, then it is agreed that the property is not within the jurisdiction of that county and could not there be legally assessed in Tallapoosa county, where, it appears, it has all along been assessed.

· The question presented calls for a construction of the act, approved February 15, 1866, creating the county of Elmore, as a new county, out of portions of the counties of Coosa, Montgomery, Tallapoosa, and Autauga; the first section of which—the only part of the act material to the consideration here—reads: "That from and after the passage of this act, all that portion of Coosa county south of the township line, dividing townships 20 and 21; all that portion of Tallapoosa county south of said township line, dividing townships 20 and 21, and west of the Tallapoosa river; and all that portion of Montgomery county north of the Tallapoosa river; and all that portion of Autauga county east of the range line, dividing ranges 16 and 17, be and the same are hereby constituted a new county, to be called the county of Elmore."—Acts 1865-66, p. 484.

From this quotation it is seen that by the act Elmore county was created, at the point here in controversy, out of that portion of Tallapoosa county which was, in the language of the act, "west of the Tallapoosa river." Appellant contends that this means west of the west bank of the Tallapoosa river at low-water mark, while appellee insists that means west of the middle or thread of the stream of the Tallapoosa river, each party relying for support upon the numerous authorities as severally cited in their respective briefs. The identical question has not before been presented to either of our reviewing courts.

(1) At common law the boundaries of lands lying upon navigable rivers—that is, rivers in which the tide

ebbs and flows—extend only to high-water mark, the shore between high and low-water mark and the bed of the stream being vested in the crown; and this rule is applied in Alabama to the boundaries of land lying upon tidal rivers that are navigable in fact.—*Mobile Transportation Co. v. Mobile*, 128 Ala. 348, 30 South. 645, 64 L. R. A. 333, 86 Am. St. Rep. 143, limiting *Webb v. Demopolis*, 95 Ala. 116, 13 South. 289, 21 L. R. A. 62.

(2) At common law a conveyance or grant of land bounded upon a river or stream in which the tide does not ebb and flow, although navigable in fact, is presumed to convey title to the middle of the stream; but in this state, where the test of navigability is navigability in fact (*Sullivan v. Spotswood*, 82 Ala. 166, 2 South. 716), our decisions limit this right to low-water mark (*Bullock v. Wilson*, 2 Port. 436, and cases cited in the report of that case in volume 6 of West Publishing Company's annotated Alabama Reports; *Mobile Transportation Co. v. Mobile, supra*).

(3) It is only in cases where lands are bounded by nonnavigable streams that a conveyance or grant carries with it the bed of the stream to the center, unless a contrary intention is manifest from the grant or conveyance itself.—*Bullock v. Wilson, supra*.

The reasons which have given rise to these different rules of construction obtaining with respect to grants and conveyances of lands bounded by navigable and nonnavigable streams seem to be these: Where the steam is navigable, since it belongs to the sovereign for the use of the public in general as a highway, and since private ownership is incompatible with such use, any grant of lands bounded by it is construed most favorably to the sovereign, and no alienation is presumed unless clearly expressed (*Hagan v. Campbell*, 8 Port 23, 33 Am. Dec. 267); but where the stream is not naviga-

ble, since the public can subject it to no use, any grant of lands bounded by it will be construed according to the usual rule—that is, most strongly against the grantor and in favor of the grantee—and will be held to convey title to the middle of the stream (if the grantor owns that far), in the absence of a contrary intention expressed in the deed or grant.

(4) Where the reason of a rule ceases, the rule itself ought to cease. In the question here under consideration, no grant or conveyance is involved, and no interest of either the public on one hand or individuals on the other is at stake. It is merely the case of the creation or organization by the sovereign, exclusively for purposes of government and for the benefit of all its citizens, of a new political subdivision—a new county—out of territory lying wholly within the state and over all of which the state had and has jurisdiction for such purpose, and where, in its exercise, the state may fix the boundaries of the new county as it may choose without in any way transgressing or violating the rights of any individual or of the public and without impinging upon either the authority, power, jurisdiction, or lands of any adjoining sovereign.—*Russell v. Robinson,* 153 Ala. 330, 44 South. 1040. It is simply the dividing up by a sovereign of its own territory into political units, which are not sovereign, for its convenience in the administration of the affairs of government, where the sole question is: What is the will of the sovereign, and not what are the right or what is the interest of the unit? Neither unit, therefore, has any standing for insisting that the boundaries fixed between it and some other unit should be construed most strongly against that unit and in favor of itself. In theory, at least, the units have no concern, since in whatever unit any particular territory may fall, its citizens are still citizens

of the commonwealth and are protected as such in all their rights and privileges. Whether the Tallapoosa river be navigable or nonnavigable, and on whatever side it or any portion of it may fall—whether in Elmore or in Tallapoosa county—all private and public rights in or with respect to it are equally secure, and the supreme authority of the state or nation over it will still exist and can as well be enforced. Consequently, in determining whether, by the language of the act quoted, the Legislature, who, in the exercise of the sovereign power of the state had ample authority to do either (*Russell v. Robinson, supra*), made the middle of the stream of the Tallapoosa river or its western bank the eastern boundary of the new county of Elmore, we may be aided, but we do not think that we should necessarily be controlled, in our construction, by rules of interpretation which were formulated and promulgated in the consideration of grants and conveyances where the public interest on one hand or private rights on the other were at stake, and which originated out of a desire to protect and enforce these respectively.

(5) We may further say that our construction is certainly not to be controlled, or even to be influenced, as is insisted by appellant that it should be, by the fact, if it be a fact, that the county authorities of the counties of Elmore and Tallapoosa have in their official actions recognized the west bank of the Tallapoosa river, and not the middle of the stream, as the boundary line between the two counties, in that they have always and for a long period of years assessed appellant's said property, now in question and that lies between such west bank and the middle of the stream, in Tallapoosa county, and have never before assessed or attempted to assess it in Elmore county. If the actual location of the line was uncertain or had been obliterated, this recognition,

we conceive, might be of some force in determining
where the line originally was (*Russell v. Robinson,* 153
Ala. 331, 332, 44 South. 1040) ; but where, as here, the
line is well known, and is neither defaced nor shifted
by time or accident, the rule is different. The statute
makes the Tallapoosa river the boundary, as far as it is
the boundary, between the two counties, and the real
question is one of construction—one of law, and not of
fact—which is as to whether the Legislature, in so mak-
ing such river the boundary, intended the river or only
the middle of its stream to be the boundary.—*Johns v.
Davidson,* 16 Pa. 521.

(6) The river at this point was originally a part of
Tallapoosa county, and it is our opinion that when the
Legislature, as they did in the act cited, declared that
Elmore county should consist, among other territory,
of "all that portion of Tallapoosa county south of the
township line dividing townships 20 and 21 and west
of the Tallapoosa river," it was intended to leave and
did leave the Tallapoosa river, in the sense that a river
is ordinarily understood—that is, to low-water mark (5
Cyc. 902, and cases cited)—in Tallapoosa county. This,
it seems to us, is the reasonable and natural and com-
mon-sense construction that should be given the lan-
guage of the act, and this irrespective of whether the
Tallapoosa river is navigable or not navigable.

(7-9) The same result will follow, however, even if
we adopt the technical construction that, as before
pointed out, is applied to grants and conveyances; since
we must take judicial knowledge that the Tallapoosa
river is a navigable river, at least as far as Tallassee—
the point here in question. It is the declared policy of
this state to regard as navigable all rivers reported to
be navigable by the United States surveyors.—*Bullock
v. Wilson,* 2 Port. 436. In one, at least, of the published

volumes of such reports, of which we take judicial knowledge (*Gordon v. Tweedy,* 74 Ala. 232, 49 Am. Rep. 813; 7 Ency. Ev. 983, see Official Executive Documents of U. S. for the years 1880-81, vol. 28, which may be found in our state department of archives and history), one of the United States engineers, in pursuance of a direction contained in the act of Congress approved June 14, 1880 (21 Stat. 194, c. 211), made an investigation of the Tallapoosa river and reported it navigable as far as Tallassee.—(*Bayzer v. McMillin Mill Co.,* 105 Ala. 395, 16 South. 923, 53 Am. St. Rep. 133).

In the case of *Robinson v. Lamb,* 131 N. C. 229, 42 S. E. 701, the Carolina court held, in construing an act creating Camden county out of "all that part of Pasquotauk county lying on the northeast side of the Pasquotauk river," that the river was left in Pasquotauk county. In the case of *Johns v. Davidson,* 16 Pa. 521, the Supreme Court of Pennsylvania had before them a question similar to that here, except that this is a stronger case, in determining whether Juniata river was in Mifflin county or Huntingdon county of that state. The boundary line of Mifflin, as formerly existing, crossed that river and took in a portion of territory on the eastern side of it, just as did the boundary line of Tallapoosa county formerly cross the Tallapoosa river and take in a portion of the territory on the western side of it. The new boundary of Mifflin county was fixed as "along the Huntingdon county line to Juniata river, and thence up said river to Jack's Narrows,". and the court held that this left the river—the. whole bed of the river—in Mifflin county. In disposing of the question, the court applied the same rules of construction, previously noted, as have been applied by our Supreme Court to grants and conveyances. It said, among other things: "By the common law, where a river [not tidal]

is used as a boundary in a grant, it is used to the center or middle of the stream, and to that extent the title or fee attaches, so that the proprietor of each bank is the owner of half the land covered by the water, saving to the public the right of highway.   *   *   *   This rule has been adopted in several   *   *   *   states, New York among the number.   *   *   *   But this rule was never adopted in Pennsylvania.   *   *   *   In Pennsylvania, wherever a stream is navigable, and it is   *   *   *   the boundary of a grant by the state, the title passes to low-water mark, but no farther."

This, as before pointed out, is the rule obtaining in Alabama as to navigable nontidal rivers, which the Tallapoosa, we judicially, as stated, know to be.—*Bullock v. Wilson, supra; Hess v. Cheney*, 83 Ala. 251, 3 South. 791; *Mobile Transportation Co. v. Mobile, supra; Glass v. State*, 30 Ala. 530; *Peters v. New Orleans, etc.*, 56 Ala. 533; *Williams v. Glover*, 66 Ala. 193; *Walker v. Allen*, 72 Ala. 457; *Bayzer v. McMillan*, 105 Ala. 399, 16 South. 923, 53 Am. St. Rep. 133; *Webb v. Demopolis*, 95 Ala. 116, 13 South. 289, 21 L. R. A. 62.

If the act had said that Elmore county should be bounded on the east by the Tallapoosa river, a different construction might obtain, as in such case there might be room for holding that its territory extended to the middle of the stream (*Kansas v. Missouri*, 213 U. S. 78, 29 Sup. Ct. 417, 53 L. Ed. 706); but it says that Elmore county shall be formed of "all that portion of Tallapoosa county   *   *   *   west of the Tallapoosa river."

In *Handly v. Anthony*, 5 Wheat. 374, 5 L. Ed. 113, the Supreme Court of the United States held that the cession by Virginia to the United States of all her right to the territory "situate, lying, and being to the northwest of the river Ohio" was a relinquishment of title to the land lying above low-water mark on the north-

[Porter v. Tennessee Coal, Iron & R. R. Co.]

western bank of that stream. See, also, *Henderson Bridge Co. Case,* 173 U. S. 624, 19 Sup. Ct. 877, 43 L. Ed. 835; *People v. Supervisors,* 125 Ill. 9, 17 N. E. 147.

Without stopping to discuss the many authorities cited by appellee, which bring about hopeless conflict, we may say in conclusion that we are clear in the opinion that, from whatever angle the matter be viewed— whether the Tallapoosa river be navigable or nonnavigable—the proper construction to be given the language of the act under consideration is to hold that the territory of Elmore county only extends on the east to low-water mark of the Tallapoosa river as the boundary line between that county and Tallapoosa county. It follows that the judgment appealed from must be reversed, which is accordingly done.

Reversed and remanded.