# McLeod v. Bishop.

*Statutory Action of Ejectment.*

1. *Evidence; statements made by party in possession as to source of title not admissible.*—While the declarations of a party in possession of property, asserting title or ownership in himself, are admissible in evidence as *res gestae*, the declarations of such person, as to the source of his title, or the manner in which he acquired the property, are not admissible.

2. *Ejectment; acts of ownership by husband when right of property acquired by wife, not admissible as showing title in him.*—Where, in an action of ejectment, the plaintiffs, claiming as heirs of the wife against the vendees of her husband, sue for lands which the husband and wife together entered upon and acquired title to by adverse possession, and the right of recovery depends solely upon the fact whether the original possession of the land was taken in the wife's or husband's right, and the occupation thereof inured to his or her benefit, evidence of special acts of ownership by the husband over the land, after he and his wife had entered into possession, are immaterial and inadmissible.

3. *Same; affidavit of former purchase and ownership of property inadmissible.*—In such an action, an affidavit made by the husband from whom the defendants claim title, at the time of the sale of the land by him, to the effect that he had purchased the land sued for with his own money, and that he had been in the uninterrupted possession since such purchase, is inadmissible.

4. *Same; equitable estoppel can not be set up in real action at law; evidence thereof inadmissible.*—An equitable estoppel can not be set up in a real action at law; and evidence that the plaintiffs in an action of ejectment had accepted a part of the purchase money of the property sued for, knowing that it was such money, whereby they would be estopped from disputing the claim of the purchasers, is inadmissible.

5. *Husband and wife; possession in wife's right can not inure to husband's benefit.*—Where the husband and wife enter together upon land in her right, and as her property—the husband recognizing the land as hers and asserting no exclusive claim to it as his own—he can not thereafter, during her life or after her death, set up an adverse claim to said land in his own right, but his subsequent possession with her during her life and his occupation of it alone after her death inures solely to the benefit of herself and her heirs.

6. *Same; same; statute of limitations.*—Where the husband and wife enter upon lands in her right and as her property, and by their joint

[McLeod v. Bishop.]

occupation she acquired title by adverse possession, upon the death of the wife, her husband surviving her, the statute of limitations will not begin to run against her heirs until after the husband's death —until after the falling in of his life estate.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. J. M. CARMICHAEL.

This was a statutory real action in the nature of ejectment, brought by the appellees against the appellants, to recover certain lands specifically described in the complaint. The principal facts of the case are sufficiently stated in the opinion.

The defendants offered to introduce in evidence an affidavit made by D. H. Bishop, from whom the defendants claim title, on February 20, 1891, and which affidavit was delivered to the defendant William McLeod by said Bishop at the time he delivered the deed to him. This affidavit was to the effect that D. H. Bishop had purchased the lands conveyed to McLeod with his own money from B. F. Streater in the year 1852 or 1853, and that the land was his own, and that he had been in the uninterrupted and visible possession of the same since he purchased it from B. F. Streater. Upon the objection of the plaintiffs, the court refused to permit such affidavit to be introduced in evidence, and to this ruling the defendant duly excepted.

The defendants offered to prove that D. H. Bishop deposited a part of the money he received from the defendant in the sale of said land in the Eufaula National Bank; that after the death of D. H. Bishop, his administrator collected said money from the bank and distributed it *pro rata* among the plaintiffs in this case as heirs of D. H. Bishop, and that when said heirs received this money they knew it was the purchase money paid to said Bishop by the defendant William McLeod for such land. Upon the objection of the plaintiffs, the court refused to allow such evidence, and to this ruling the defendants duly excepted.

Upon the introduction of all the evidence, the defendants requested the court to give in writing the following written charges to the jury, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe from the evidence that D. H. Bishop gave the land sued for in for taxes in 1862, 1868

41

and other years, and gave mortgages on said lands in 1879 and other years, and that he sold a part of same tract, then they can look to those facts in connection with all the other evidence in the case to establish the adverse holding of D. H. Bishop, and if such adverse holding continued unbroken for twenty years their verdict must be for the defendant." (2.) "If the jury believe from the evidence that D. H. Bishop was in the possession and enjoyment of the land for more than twenty years, claiming it as his own, then, the verdict must be for the defendant, McLeod."

There were verdict and judgment for the plaintiffs. The defendants appeal, and assign as error the rulings of the trial court upon the evidence, the refusal to give the charges requested by the defendants, and the rendition of judgment for the plaintiffs.

H. D. CLAYTON and A. H. MERRILL, for appellants.— 1. Bishop, the husband, and his wife could not, as a matter of law, and did not, hold possession of the lands in controversy as joint tenants, or tenants in common.— 2 Kent. Com., 135; *Gamber v. Gamber*, 18 Pa. St. 363; *Keeney v. Good*, 21 Pa. St. 349; Schouler's Dom. Relations, § 87. The holding or possession was the holding or possession of Mr. Bishop, either in his own right, or or as trustee for his wife. There being no writing or undisputed admission on the part of Mr. Bishop, showing that his holding was as Mrs. Bishop's trustee, the presumption arising from such holding is that the holding was in his own or individual or personal capacity and right. Possession is *prima facie* evidence of ownership in the person in possession. Even a tenant without title can defeat recovery in ejectment unless the plaintiff can show a title in himself.—*Badger v. Lyon*, 7 Ala. 564; *Heydenfeldt v. Mitchell*, 6 Ala. 70; *Whitsitt v. Slater*, 23 Ala. 626; *Governor v. Campbell*, 17 Ala. 566; *Finch v. Alston*, 2 Stew. & Por. 83; *Donnell v. Thompson*, 13 Ala. 440; *E. & P. Mfg. Co. v. Gibson*, 62 Ala. 369.

2. It was incompetent for the plaintiff to prove that their mother, Caroline Bishop, while she was residing on the land with her husband, D. H. Bishop, declared that her father had given the lands to her, because (1) it was not a part of the *res gestæ*, and (2), her possession was not admitted, but was always a matter of dis-

[McLeod v. Bishop.]

pute and doubt, and, (3), because it was a declaration as to the source of title, or the manner in which she claimed to have acquired the property.—*Ray v. Jackson,* 90 Ala. 513. The fact of Mrs. Bishop's possession should first have been established before any such declarations could have been considered a part of the *res gestæ*; otherwise, a declaration would be made evidence of possession or title, rather than explanatory of the tenure. This was not a part of the *res gestæ*, for it was not connected with the principal fact under investigation, i. e., whether or not Mr. Streater gave the lands to Mrs. Bishop.—*Thomas v. DeGraffenried,* 17 Ala. 602; *De-Graffenreid v. Thomas,* 14 Ala. 681; *DeGraffenried v. v. Thomas,* 27 Ala. 651; *Rowan v. Hutchisson,* 27 Ala. 328.

3. The affidavit made by D. H. Bishop on the 20th of February, 1891, while he was in possession of the lands, declaratory of the character in which he held or claimed them, was admissible in evidence on the issue of the disputed ownership.—*Steed v. Knowles,* 97 Ala. 573; *Daffron v. Crump,* 69 Ala. 79; *Jones v. Pelham,* 84 Ala. 210; *Humes v. O'Bryan,* 74 Ala. 64; *Lucy v. Tenn. & Coosa R. R. Co.,* 92 Ala. 250; 1 Brick. Dig. 843, §§ 558–559.

4. The charge requested by the defendant asserting, in substance, that if the jury believe that D. H. Bishop gave the lands sued for in for taxes for various years, and gave mortgages on said lands during various years, and that he sold a part of said lands, then the jury could look to those facts in connection with the other evidence in the case to establish the adverse holding of D. H. Bishop, and that if such adverse holding continued unbroken for twenty years, their verdict must be for the defendant, should have been given.—*Trufant v. White & Co.,* 99 Ala. 526; *Steed v. Knowles,* 97 Ala. 573.

ALSTON & PEACH and ROQUEMORE & WHITE, *contra.*—The declarations of Caroline Bishop, made while she was in possession of the property, relative to the source of her title thereto, were a part of the *res gestæ*, and therefore admissible in evidence.—*Howell v. Huyck,* 2 Abb. App. Dec. (N. Y.) 423; *Sweezey v. Collins,* 40 Iowa, 540; 21 Am. & Eng. Encyc. of Law, 117. The declaration of S. M. Streater, if it can be so called, was an admission or declaration, made in response to a dec-

laration made to him by Caroline Bishop, that she was "holding as a gift from him." It is admissible under the doctrine "The declarations of strangers are sometimes admissible, but they should be shown to be a part of the thing done contemporaneous with it, and so connected with it as to give it character; they should amount to verbal acts that would be attributed to the party whose acts or conduct they explain."—21 Amer. & Eng. Encyc. of Law, 108. Such declarations become a part of the *res gestæ.—M. & M. R. R. Co. v. Ashcraft*, 48 Ala. 31; Phil. Evidence, 185; *Smith v. Gillam*, 80 Ala. 296; *Hart v. Kendall*, 82 Ala. 149.

HEAD, J.—Statutory real action by appellees against appellants for 153 acres of land. Plaintiffs claimed as the heirs of Caroline Bishop, who died in May, 1876. The defendants claimed under purchase by Wm. McLeod, in 1891, from D. H. Bishop, who was the husband of said Caroline, and who died during that year, or the next, having executed a conveyanco to McLeod. There was evidence tending to show that Shepherd M. Streater, who was the father of said Caroline, was in possession of the land from 1836 to 1852 or 53, when said D. H. Bishop and his wife, said Caroline, moved on the land whereon they continued to reside together, until the death of Caroline in 1876; and thereafter he continued to reside thereon, exercising the usual acts of ownership of an absolute owner, until his death, though he had sometime before, as stated, conveyed to McLeod. It is not questioned by either party that the title of Streater was divested by the possessions. The questions for trial were, to whom should the possession be referred, during the occupancy of the husband and wife? and what was the legal character of the husband's possession after the death of the wife, until he sold to McLeod? A witness for plaintiffs testified that "in 1856 and 7, before and after that time, he heard D. H. Bishop say that said land belonged to his wife." The plaintiffs then asked the witness, if he heard said Caroline, while she was residing together with her husband on the land, make any declarations to the effect that her father had given said lands to her? The question was objected to on the grounds, that it sought to prove by parol evidence a gift of land; and that the declaration was not

made in the presence of the husband. The objections were overruled, and the witness answered that she stated in his presence, shortly after she and her husband moved on the lands in 1852 or 53, that her father had given the lands to her. The principle that declarations of one shown to be at the time in actual possession of property, asserting title of ownership in himself, are admissible as *res gestæ*, does not extend to declarations as to the source of his title, or the manner in which he acquired the property.—1 Brick. Dig. 843, § 560; *Ray v. Jackson*, 90 Ala. 513, and authorities cited. There was error, therefore, in admitting the testimony objected to, and overruling the motion to exclude it. The same is true of the declaration made by her in the presence of her father. There was testimony by two other witnesses, of admissions made by D. H. Bishop that the lands belonged to his wife.

The court, on objection of plaintiffs, refused to permit a witness for defendants to testify that D. H. Bishop had been in the uninterrupted possession of the land in controversy for twenty-five years, or more, before he deeded it to McLeod, living on it and cultivating it ; that said Bishop's homestead upon which he and his wife resided together until her death consisted of a body of 160 acres ; that witness bought eight acres from him ten or twelve years ago, and that the balance of the 160 acres is the land in controversy ; that witness bought the eight acres and received a deed from D. H. Bishop after the death of said Caroline, and while D. H. Bishop was in possession and claiming the whole of said 160 acres. It is clear, as we have said, that the governing question in the cause is whether the occupation of the land by Mr. and Mrs. Bishop was in his or her right. If they went upon it as her property—the husband recognizing it as hers, asserting no exclusive claim as his own—he could not thereafter, during her life or after her death, set up an adverse claim in his own right. Going into the possession of the land as hers, and for her, the husband's statutory trusteeship of the wife attached, with its attendant duties, and no use or disposition he might make would impair her right. Or, leaving the statute out of view, he became tenant by the courtesy initiate, and could set up no efficacious adverse claim in his own be-

half. After her death, in such case, he became the owner for life with all the rights and subject to all the disabilities which attach to such life tenancies. By no act of his or his vendee, could the title of the heir in reversion be effected. The statute of limitations could not begin to run against the reversioners until his death. On the other hand, if the possession of the land was taken and held, not in the right of the wife as owner, she having no muniment of title, but in the right of D. H. Bishop himself, then that is an end to the controversy, and plaintiffs cannot recover; so, in that case, Bishop's special acts of ownership and dispositions of all the property are wholly immaterial. We cannot see, therefore, that the decision by the jury of the pivotal question, whether the possession was taken as the wife's property, the husband then recognizing it as hers, can properly be influenced by his subsequent special acts of ownership, since in neither case can such acts take from the plaintiffs' right of recovery, nor add to the defendants' defense. They shed no light on the main inquiry, and are calculated to mislead the jury. It is not a question, we repeat, whether a title in the wife has been defeated by the adverse possession of her husband, which could not legally be accomplished, but whether the title, or that which was claimed and recognized as title, was in the husband or the wife. As this question shall be decided by the jury, so should the verdict go.

The affidavit made by D. H. Bishop when he conveyed to McLeod was clearly inadmissible.

Equitable estoppels cannot be set up in real actions at law.

The charges requested by the defendants were properly refused.

For the errors mentioned, the judgment must be reversed, and the cause remanded.

Reversed and remanded.