# Mobile Transportation Company
# *v.* The City of Mobile.

## *Action of Ejectment.*

1. *Public lands; title of State in shores and beds of navigable streams.*—Under the compact admitting Alabama into the Union the title to all lands not reserved to the United States became vested in the State, and as to the shores and beds of navigable streams there is no reservation, since it would conflict with the law admitting new States upon an equal footing with the original states, as well as with the Constitution restricting the municipal jurisdiction of the United States to certain specified cases.

2. *Constitutional law; each law to contain but one subject which shall be embraced in its title; purpose of.*—The object of the constitutional provision that "each law should embrace but one subject which shall be described in the title" (Const. 1865, Art. IV, Sec. 2) is to prevent surprise and fraud in passing laws under misleading titles; but it should not be so construed as to defeat legislation not clearly within the evil, and however general the title may be if it is single and directs the attention truly to the matter of proposed legislation the provision is satisfied.

3. *Same; same; case at bar.*—The act entitled "An act granting to the City of Mobile the riparian rights of the river front," while the body of the act grants the fee, does not offend the constitutional provision requiring each law to embrace one subject which shall be described in the title (Const.

[Mobile Transportation Company v. The City of Mobile.]

1865, Art. IV, Sec. 2), since the word "rights" may include absolute rights—that is a fee,—and the word "riparian" is a mere localizing term to "rights."

4. *Grant of land adjoining shore where tide ebbs and flows; where same ends.*—A grant from the government of land adjoining a shore where the tide ebbs and flows only extends to high water mark.—*Webb v. Demopolis*, 95 Ala. 126, explained and qualified.

5. *Title of State to land adjoining tide water; effect of subsequent grant by the government.*—By the act of admission into the Union the State of Alabama became vested with the title to all land between the water and high tide where the same adjoins tide water, and a subsequent grant by the federal government of such land is void and ineffectual for any purpose.

6. *Same; power of disposition.*—The shores of tide water are held in fee by the State subject only to the power of Congress to regulate commerce; and the State has the right to convey its interest provided the conveyance does not conflict with this power of Congress, and particularly is this true when the conveyance is in furtherance of the public interest.

7. *Municipal corporation; repeal of charter; new organization; power to enforce rights of old.*—The identity of a municipal corporation is not .changed by the repeal of its charter and the substitution of a new organization for substantially the same inhabitants and locality. Where the name is changed it may be proper for the pleadings to trace it, but when there is no change in name and the courts take judicial notice of the law making the substitution, it is unnecessary to make any averment or obtain any order as to the prosecution of pending suits,—any authoritative steps taken by the new organization for that purpose being sufficient.

8. *Same; title of trustee of bond-holders to property held in trust.*—Under the act of the General Assembly (Acts, 1878-9, p. 381) only such property of the City of Mobile that was subject to payment of debts passed to the trustees of the bond holders of the city; and, therefore, property held by said city in trust, such as the shore on tide water between the water and high tide, was not conveyed.

9. *Ejectment; right of trustee to maintain.*—The holder of the legal title to land though it be in trust may maintain ejectment against any one who ousts him or claims to hold adversely even though it be a *cestui que trust.*

[Mobile Transportation Company v. The City of Mobile.]

10. *Same; what land may be recovered.*—Ejectment is maintainable to recover land though it be servient to the flow of water over it, or of navigation.

11. *Municipal corporations; trust property; limitations; estoppel.* Neither the statute of limitations nor adverse possession runs against a municipality as to property held in trust by it, nor does the collection of taxes against such property estop the city from asserting its legal title.

12. *Ejectment; charges of court.*—In ejectment to recover the shore of tide water up to high water mark a charge which seeks to limit the recovery to high tide at the time of the trial is erroneous, since it may be different from that existing at the institution of the suit.

13. *Same; evidence; public statutes and grants; reading same to the jury.*—Public statutes and grants may be read in evidence where they constitute the title papers of either party in ejectment, and it is not error to read them to the jury, since it is permissible to prove any fact that is judicially known.

14. *Authority of attorney to bring suit; how shown.*—The oath of an attorney as to his authority to institute and conduct a suit is sufficient evidence of his authority, in the absence of any evidence contradicting it.

15. *Motion to retax; when not reviewed.*—Where after a final judgment has been entered a motion to retax costs is made and an appeal taken from such final judgment, the ruling of the court below upon the motion to retax cannot be considered, since it could in no wise have affected the judgment from which the appeal was taken.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. W. S. ANDERSON.

This was an action of ejectment brought by appellee against appellant to recover a portion of the shore of Mobile river up to the high water mark. The plaintiff claimed title under an act of the legislature of Alabama, approved January 31, 1867, while defendant claimed title under a patent issued by the United States in 1836 and successive conveyances from the patentee to it. After the institution of the suit the charter of the city of Mobile was repealed and a new charter enacted but substantially for the same inhabitants and locality. The authority of the plaintiff's attorney to

22

[Mobile Transportation Company v. The City of Mobile.]

conduct being questioned was sustained by oath from him. The other facts necessary to an understanding of the opinion will appear therein.

There were verdict and judgment for the plaintiff. Afterwards defendant moved to retax the costs, but this motion was denied. From the judgment in favor of the plaintiff defendant appeals, and assigns as error the several rulings of the court below upon the admission of evidence and the giving and refusing of charges to the jury.

FREDERICK G. BROMBERG, for appellant.—The State holds the lands under the navigable waters of the State not absolutely but in trust, not alone for the people of the State of Alabama, but in trust for the people of the whole United States. Every citizen of the United States, by reason of that citizenship, whether his State citizenship be in Alabama or in Alaska, has an indefeasible right to use and pass over the navigable waters of the State, subject to the riparian rights of the owners of the lands abutting on such waters, of which he cannot be divested. The State holds the title to the soil of its navigable rivers subject to such rights and cannot divest itself of this trust to maintain them inviolate. It is enacted in the act for the admission of the State of Alabama into the Union that "all navigable waters within the said State shall forever remain public highways, free to the citizens of said State and of the United States, without any tax, duty or import or toll therefor imposed by the State."—Code 1876, p. 42, § 6, par. 4; *Mobile v. Eslava,* 9 Port. 598, 599, 600; *Gibson v. United States,* 166 U. S. 271 and 272.

The Congress of the United States have enacted that all the navigable rivers and waters in the former territories of Orleans and Louisiana shall be and forever remain public highways.—Rev. St. U. S., § 5251. The Congress was not precluded from so enacting by anything the State may have done.—*Williamette Iron Co. v. Hatch,* 125 U. S. 1.

The State also holds the shores and soil under the navigable waters of the State in trust for the owners of the lands abutting upon such waters whose riparian rights in such waters and shores and soil are property rights of which they cannot be divested without due process of law.—*Illinois Cent. R. R. Co. v. Illinois*, 146 U. S. 445, 446; *Murphy v. City Council*, 11 Ala. 586; *Hagan v. Campbell*, 8 Port. 33; 1 Dillon Mun. Corp. (4th ed.), §§ 103, 106, n. 1, 107, 108; 29 Am. & Eng. Ency. Law, 65, 66. 68 and n. 2; *Yates v. Milwaukee*, 10 Wall. 497; *Shively v. Bowlby*, 152 U. S. 40; *Weber v. Harbor Commissioners*, 18 Wall. 64, 65; *Gough v. Bell*, 22 N. J Law, 441, cited in *Roberts v. Brooks*, 78 Fed. 414; 6 Jacob's Fishers Dig., 9314; 8 Jacob's Fishers Dig. 11689.

In Alabama the title to land on the margin of navigable rivers, between high and low water mark, is in the proprietor of the land abutting thereon.—*Webb v. Demopolis*, 95 Ala. 127, 129; *City of Demopolis v. Webb*, 87 Ala. 670; *Williams v. Glover*, 66 Ala. 189. Such being the facts, that the State holds the title to submerged lands in trust, first for the people of the State and the United States for the purposes of navigation, and, secondly, in subordination to the rights of riparian proprietors, it could not pass such an act as the act under which the plaintiff claims.—*Illinois Cent. R. R. Co. v. Illinois*, 146 U. S. 387; *Shively v. Bowlby*, 152 U. S. 1; *Gibson v. United States*, 166 U. S. 271, 272.

There are decisions in New Jersey which appear to hold broadly that the State may dispose absolutely of shores on the tide waters of the State, free from any right of riparian owner in them, and without compensation to him for such loss.—*Stevens v. Patterson, etc., Railroad*, 5 Vroom 532 (34 N. J. Law), which is cited in *Hoboken v. Penn. R. R. Co.*, 124 U. S. 656, 690; *Shively v. Bowlby*, 152 U. S. 1, 23.

The State had a right to annul the charter of Mobile and destroy the corporation.—1 Dillon Mun. Corp. (4th ed.), §§ 86, 87, 88, 91; Cooley Const. Lim. (4th ed.), §§ 231, 232, 233; *Mt. Pleasant v. Beckwith*, 100 U. S. 525, 526, 528, 530; *New Orleans v. N. O. Water Works*

*Co.,* 142 U. S. 79, 89. There is no connection between the old corporation and the new, and the old corporation has no claim upon public property within the boundaries of the new.—*Mt. Pleasant v. Beckwith,* 100 U. S. 524, 526.

The foregoing shows that, if ever the act of January 31, 1867, were valid, all estate vested by it in the old city of Mobile has been withdrawn and is now in the trustee of the bondholders. The General Assembly had the power to do this.—*Illinois Cent. R. R. Co. v. Illinois,* 146 U. S. 452.

The defendant, although a corporation, is under the equal protection of the laws as if it were an individual, by virtue of the 14th amendment to the Constitution of the United States.—*Charlotte Railroad v. Gibbs,* 142 U. S. 391; *Minneapolis, etc., v. Beckwith,* 129 U. S. 26; *Covington Turnpike Co. v. Sanford,* 164 U. S. 592.

The effect of the judgment in ejectment is to *exclude* the defendant absolutely from a part of the navigable waters of the State, in which it has not only the right of navigation, in common with all other citizens of Alabama and the United States, but it also, absolutely excludes it from its riparian rights, viz.: The right of approach to its lands; the right to build wharves on its lands; the right to tie up vessels to its lands, and to use the approaches to its lands over said waters for the purposes of commerce.—*Rice v. Ruddiman,* 10 Mich.; *Sterling v. Jackson,* 69 Mich. 488; 37 N. W. Rep. 852-3; *Hall v. Alford,* 72 N. W. Rep. 137.

More than this, such judgment would exclude defendant from its right to the natural accretions to its lands, which is a part of its riparian rights.—*Hagan v. Campbell,* 8 Port. 33; *Kennedy v. Jones,* 11 Ala. 63; 1 Ency. of Law (2d ed.), 496, par. II; *Shively v. Bowlby,* 152 U. S. 35; *Mayor v. Eslava,* 9 Port. 591.

Lines of riparian owners in the city of Mobile may extend to the *channel* of the Mobile river.—*Hagan v. Campbell,* 8 Port. 33, approved in *Hallett v. Hunt,* 7 Ala. 905.

GREGORY L. & H. T. SMITH, *contra.*—The first ques-
tion which arises is the question as to whether or not
the patent of the United States government, issued in
1836, divested the title to the land between high water
mark and low water mark, where the tide ebbs and
ffows, out of the State of Alabama, and vested it in the
patentee of the government, so as to shut off the right
of the State to take possession of those lands, either by
itself, or its proper grantees. A close inspection of all
the cases in Alabama bearing upon this subject, will
demonstrate that the contention of the appellees, has
been the settled law of Alabama since the beginning of
our judicial history, and that the cases cited by the ap-
pellant do not, when read with an understanding of
the rationale and history of the law, and by the facts
of the several cases themselves, in the slightest con-
flict with our assertion. This question first came before
the Supreme Court of Alabama in the case of *Mobile v.
Eslava,* 9 Porter, 577. This case was cited with ap-
proval, and affirmed in the case of *Goodtitle v. Kibbe,* 1
Ala. 403, and the doctrine there asserted was reaf-
firmed by our Supreme Court in the later case of *Ken-
nedy v. Bebee,* 8 Ala. 914, and in *Pollard v. Greit,* 8 Ala.
941.

The case of *Mobile v. Eslava,* was appealed to the Su-
preme Court of the United States, and was by that court
affirmed.—*City of Mobile v. Eslava,* 16 Pet. 240. This
Alabama doctrine has also been thoroughly established
by the Supreme Court of the United States.—*Pollard
v. Hagan,* 3 How. 212; *Goodtitle v. Kibbe,* 9 How. 471;
*Hoboken v. Pa. R. R. Co.,* 124 U. S. 688; *Hallett v.
Bebee,* 13 How. 25; *Shively v. Bowlby,* 152 U. S. 55.

It is the policy of the law to restrict and not to en-
large the riparian ownership at the expense of the State.
It is not, therefore, surprising to find that in *Webb v.
Demopolis,* and in every other case in Alabama where
it has ever been held that the riparian owner took be-
low high water mark, the land in question was situate
far above the influence of the tide, and was upon a
stream of such a nature that at common law the ripar-
ian owner took to the middle of the stream, and that
his common law right was by the decision restricted and

not extended. Following the common law all of the authorities, except in States controlled by statutes, agree that the riparian ownership on *tide* water extends only to high water mark.—*People v. Morrill,* 26 Cal. 357; *More v. Massini,* 37 Cal. 432; *Wright v. Seymour,* 69 Cal. 122; *Land & Water Co. v. Richardson,* 70 Cal. 209; *Kimball v. McPherson,* 46 Cal. 108; *East Haven v. Hemingway,* 7 Conn. 202; *Simons v. Freach,* 25 Conn. 352; *Middletown v. Sage,* 8 Conn. 221, 228; *Chapman v. Kimball,* 9 Conn. 40, 41; *State v. Sargent,* 45 Conn.373; *Sullivan v. Moreno,* 19 Fla. 219; *Rivas v. Solary,* 18 Fla. 126; *Day v. Day,* 22 Md. 537; *Garritee v. M. & C. C. of Balto.,* 53 Md. 432; *Martin v. O'Brien,* 34 Miss. 22; *Arnold v. Mundy,* 1 Halst. 1; *Gough v. Bell,* 1 Zab. 157; *Bell v. Gough,* 3 Zab. 624; *State v. Jersey City,* 1 Dutch. 525; *Stevens v. R. R. Co.,* 5 Vroom 532; *Wheeler v. Spinola,* 54 N. Y. 385; *Trustees v. Kirk,* 68 N. Y. 460; *Gould v. H. R. R. Co.,* 6 N. Y. 522; *People v. Tibbetts,* 19 N. Y. 523; *Roberts v. Baumgarten,* 110 N. Y. 310; *Bowlby v. Shively,* 22 Oregon, 410; *Parker v. Taylor,* 7 Oregon, 445; *Bailey v. Burges,* 11 R. I. 331; *Aborn v. Smith,* 12 R. I. 373; *Brown v. Goddard,* 13 R. I. 76; *Mayor of Galveston v. Menard,* 23 Tex. 349; *Eisenbach v. Halfield,* 2 Wash. 236; *Harbor Line Comrs. v. State, Id.* 531; *Morse v. O'Connell,* 7 Wash. 117; *Allen v. Forrest,* 8 Wash. 702.

In several States the riparian owner, even upon tide waters, has been permitted by statute and even by acquiesence, to wharf out to navigable water. This privilege, wherever recognized, however, has been obtained directly from the State; it is not a title, but a license; it is not a right against the State or its assignee, but merely a privilege, supposed to be indulged by the State in the absence of an expression of a contrary intent. The doctrine is to the effect that in the absence of the expression of the contrary intention on the part of the State, acting through those who are authorized to act in this matter, it will be assumed by the court that the State intends to permit the owner of the adjoining land to use the land between low water and high water mark, which is adjacent to its other prop-

erty. The Supreme Court of Alabama, of course, has no power to create any license, or to grant any right. It may, from the facts in the case, imply an intention on the part of the State itself to grant such a license, but this license must come from the State, and not from the court. The cases of *Stephens v. P. & N. R. R. Co.*, 34 N. J. L. 546, and of *Pa. R. R. Co. v. N. Y. & L. B. R. R. Co.*, 23 N. J. E. 159, are directly in point, and it was there held, after an exhaustive argument of the matter, that the court will presume an intention on the part of the State to grant a license to the owner of adjoining lands, to use the shore, *though this license is, at all times, revocable before the acceptance thereof.*

In the case at bar, there was no acceptance of the license in question, prior to the act of 1866, by which this license was expressly withdrawn, or, rather, the proprietorship of the State was expressly asserted and exercised by a State "in a sense admitting individual *proprietorship in the city of Mobile.*" If it be suggested that the grant by the United States was made in 1836, while the grant of the State of Alabama to the city of Mobile was made in 1866, and that, therefore, about thirty years had elapsed during which the license was in force, it is sufficient to say that while it may have been true that during that time the patentee did have power to avail himself of this license, he did not do so, and that it was revocable until it was exercised, or, rather, that there is nothing from which to imply the license until it is exercised. The theory in regard to the nature of the right which the grantee of the government obtains to the lands below high water mark in those States where this rule prevails, is supported by the case of *Shively v. Bowlby*, 152 U. S. 55. See also *Gould v. Hudson R. R. R. Co.*, 6 N. Y. 522; *Stevens v. P. & N. R. R. Co.*, 5 Vroom (34 N. J. L.) 532; *Hoboken v. Pa. R. R. Co.*, 124 U. S. 656; *Eisenbach v. Hatfield*, 2 Wash. St. 236; *Hardin v. Jordan*, 140 U. S. 382.

The State may grant to any individual the right to wharf out upon the shores of another's land without

compensation to the latter. This is no violation of the riparian owner's rights.—*Martin v. O'Brien*, 34 Miss. 22; *Ravenswood v. Fleming*, 22 W. Va. 52; *Eisenbach v. Hatfield*, 2 Wash. St. 236; *Harbor Line Comrs. v. State*, 2 Wash. 531.

To wharf out rests upon passive or implied license merely. The State may regulate it, or even prohibit it.—*Cohn v. Wausau Boom Co.*, 47 Wis. 302; *Diedrich v. R. R. Co.*, 42 Wis. 262; *Eisenbach v. Hatfield*, 2 Wash. 236; *Harbor Line Comrs. v. State*, 2 Wash. 531; *State v. Sargent*, 45 Conn. 358; *Musser v. Hershey*, 47 Iowa 361-2; *Stevens v. R. R. Co.*, 5 Vroom (N. J.) 532; *Stewart v. Fitch*, 2 Vroom (N. J.) 18; *Keyport, etc., v. Farmers' Transp. Co.*, 3 C. E. Green (N. J.) 511.

The appellee insists that the State had full power to grant the shore of its tide waters, and that therefore the grant to it was valid and effective. But there can be no real doubt as t) the power of the State to grant the shore even to a private concern, nor that the grant by statute, such as the act of 1867, is effective to operate such a transfer.—*Goodlet v. Smithson*, 5 Port. 245; *Wright v. Swan*, 6 Port. 84; *Swan v. Lindsay*, 70 Ala. 517. The right of disposition of land by the State to the channel of the river seems to be settled in *Shively v. Bowlby*, 152 U. S. 46. See also *Packer v. Bird*, 137 U. S. 671; *Barney v. Keokuk*, 94 U. S. 324; *Hardin v. Jordan*, 140 U. S. 381.

The State has power to make an absolute grant of tide or submerged lands.—*Eldridge v. Cowell*, 4 Cal. 87; *Ward v. Mulford*, 32 Cal. 366; *Chapin v. Bourne*, 8 Cal. 295; *Upham v. Hosking*, 62 Cal. 250; *East Haven v. Hemingvay*, 7 Conn. 198; *Gough v. Bell*, 1 Zab. 157; *State v. Jersey City*, 1 Dutch 525; *State v. Brown*, 3 Dutch 14; *State v. Collector*, 4 Zab. 108; *Keyport, etc., Co. v. Farmers' Transp. Co.*, 3 C. E. Gr. 511; *Gould v. H. R. R. R. Co.*, 6 N. Y. 522; *People v. Tibbetts*, 19 N. Y. 528; *Williams v. Mayor*, 105 N. Y. 420; *Mayor of Galveston v. Menard*, 23 Tex. 349; *McReady v. Commonwealth*, 27 Grattan 985; *Eisenbach v. Hatfield*, 2 Wash. 236; *Morse v. O'Connell*, 7 Wash.

119; *Wisconsin R. I. Co. v. Lyons*, 30 Wis. 65; *Martin v. O'Brien*, 34 Miss. 22.

In *Hagan v. Campbell & Cleveland*, 8 Port. 25, the court said: "The shore at common tide belongs to the public, though by grant it may become the property of the citizen."—*Webb v. Demopolis*, 95 Ala. 116.

That the present city of Mobile, comprising as it does the same people and the same territory, is the successor of the former city and entitled to the possession of its property, is so fully decided as to need no discussion upon principle.—*Mobile v. Watson*, 116 U. S. 301; Dillon Mun. Corp., § 172; *Milner's Admr. v. City of Pensacola*, 2 Wood 632; *Broughton v. Pensacola*, 93 U. S. 269; *O'Conner v. Memphis*, 6 Lea 730; *Amy & Co. v. Selma*, 77 Ala. 124.

That if the plaintiff has title it may recover can hardly be questioned and that ejectment is the only possessive action for land whether above or below the water is, we think, not open to doubt.—*Hoboken v. Penn. R.*, 124 U. S. 658; *Barney v. Keokuk*, 94 U. S. 324.

In *Mobile v. Eslava*, 9 Port. 577, the action was trespass to try title.—*Goodtitle v. Kibbe*, 1 Ala. 403, 9 How. 471; *Pollard v. Greit*, 8 Ala. 932; *Kennedy v. Bebee*, 8 Ala. 909; *Hardin v. Jordan*, 140 U. S. 371.

A great number of the cases already cited were actions of ejectment for submerged lands and it has never before been suggested that the remedy was ill chosen.

Nothing is better settled, however, in Alabama than that an equitable estoppel cannot avail the defendant in an action of ejectment.—*Hawkins v. Ross*, 100 Ala. 463; *McLeod v. Bishop*, 110 Ala. 640; *Goodman v. Winter*, 64 Ala. 410.

Indeed, a defendant is not permitted to plead anything specially in this action.—*Bynum v. Gold*, 106 Ala. 434.

The appellant says that although he obtained no title to the shore, yet he has some sort of right thereto as a riparian owner. The riparian owner takes no *title* to the land below his proper line except by accretions.—Lewis on Eminent Domain, § 78; Gould on Waters, § 167; *Shively v. Bowlby*, 152 U. S. 1; *Hagan v. Campbell,*

8 Port. 11; *Stevens v. P. & N. Ry.,* 34 N. J. L. 532; *Pa. R. Co. v. N. Y. & L. B. R.,* 23 N. J. E. 159; *Coburn r. Ames,* 52 Cal. 398; *Dona v. Jackson St. Wharf Co.,* 31 Cal. 118.

TYSON, J.—The present case is an action of ejectment in Code form, by the City of Mobile, to recover of the appellant certain real estate described in the complaint, constituting the shore of part of Mobile River below high water mark.

The plaintiff's title was derived from the State of Alabama through and by an act of the legislature, approved January 31st, 1867, entitled "An act granting to the city of Mobile the riparian rights of the river front," supplemented by the acts of 18th February, 1895, and of December 5th, 1896, the latter being amendatory of the former and confirming and vesting all rights theretofore vested in any municipal corporation of Mobile in the City of Mobile.

If the act of 1867 was operative, it is evident that the legal title to the shore of the river, below high water mark, as described in the act, under the rule of the common law, became vested in the city of Mobile. Though the property belonged to the United States before the admission of the State in the Union, by the compact under and by which Alabama became a State, the title to all lands not reserved to the United States became the property of the State of Alabama. It being well settled there was no reservation, and could be none, in the shores and beds of navigable streams, since such reservation would conflict with the fundamental law of organization under which new States are entitled to be on an equal footing with the original States, as well as with the constitution restricting the municipal jurisdiction of the United States to the particular cases enumerated therein.—*Pollard v. Hagan,* 3 How. 212; *Escanaba. v. Chicago,* 107 U. S. 689; *Huse v. Glover,* 119 U. S. 546; *Sands v. Improvement Co.,* 123 U. S. 296; *Willamette Bridge Co. v. Hatch,* 125 U. S. 9; *Shively v. Bowlby,* 152 U. S. 1.

The chief important question is, whether the act of 1867 is a valid law. The appellant insists that it is void because its title does not sufficiently describe the purpose of the body of the act. The constitution of 1865, under which this law was enacted, required that "each law should embrace but one subject which shall be described in the title."—Art. IV, § 2, Const., 1865. The title is "An act granting to the city of Mobile the riparian rights in the river front;" while the body grants the fee. The objection is, that "riparian rights" could not comprehend the fee, but only easements therein, distinct from absolute ownership. The object of this provision of the constitution, was to prevent surprise and fraud, in passing laws under misleading titles. It should not, therefore, be construed so as to defeat, by too technical an application, legislation not clearly within the evil aimed at. If the title of an act is single and directs the mind to the subject of the law in a way calculated to direct the attention truly to the matter which is proposed to be legislated upon; the object of the provision is satisfied. In such case, the generality of a title, not defining the particulars of the proposed legislation, would be more apt to excite general attention than otherwise, since the general words would give warning that everything within their limits might be affected and thus draw the attention of the whole body of legislators, while narrower words would only interest those concerned with the matters specially named. It is, therefore, held that the generality of the title is no objection if it may comprehend the particulars of the body of the act, and that the act must be upheld if the subject may be comprehended in the title.—*Adler v. State,* 55 Ala. 21; *Ballentine v. Wickersham,* 75 Ala. 536; *Quartlebaum v. State,* 79 Ala. 1; *Edwards v. Williams,* 70 Ala. 145; 23 Ency. Law (1st ed.), 229-235.

In this case, the body of the act grants the fee in the *locus in quo;* the title, "riparian rights." The question is, may not the "rights" comprehend *absolute* rights or property, to-wit, a fee; and may not "riparian" be taken as a mere localizing term to "rights?" The first defini-

tion of the word riparian in the Century Dictionary is, "pertaining to or situated on the bank of a river." We think the fair and reasonable meaning of the title is to grant rights (property) which are riparian, that is, situated on or along the bank (*ripa*) of the river. No great precision and nicety of language is necessary in such case. It is sufficient if the common and ordinary mind would understand from the title the subject in reference to which a particular law is proposed. We, therefore, hold the act in question free from the objection interposed to it.

The next question is, whether the patent from the United States in 1836 to the persons under whom defendant claimed, to the land adjoining the shore sued for, extended to low water mark, and if so, affected the previous title to the State to the land below high water mark. We must decide both of these questions in the negative. It is true, the first point was decided otherwise in the case of *Webb v. Demopolis*, 95 Ala. 126, and in one or two other cases, relating to the shore line of streams above the ebb and flow of tide water. But these cases in no wise conflict with the common law rule so often approved by this court and other jurisdicttions that on streams where the tide ebbs and flows grants of adjoining lands only extends to the ordinary high tide line along the shore. The law is definitely settled as to this point, and it could hardly have been the purpose of the decision in *Webb v. Demopolis* to disturb this rule of property supported by a vast array of authorities without making reference to them. At common law, the adjoining owner of the shore would, in the case of *Webb*, have acquired title to the center of the stream, but the decision restricted the rule on account of the actual navigability of the stream to the line of low water. This cannot be a reason for enlarging the common law rule as to tide-water shores which restricted the rights of adjoining owners to the line of high tide.—*Mobile v. Eslava*, 9 Port. 577; s. c. 16 Peters, 240; *Goodtitle v. Kibbe*, 1 Ala. 403; s. c. 9 How. 471; *Kennedy v. Beebe*, 8 Ala. 914; *Pollard v. Greit*, 8 Ala. 941; *Pollard v. Hagan*, 3 How. 212; *Hoboken v. Pa.*

*R. R. Co.*, 124 U. S. 688; *Hallett v. Beebe*, 13 How. 25; *Shively v. Bowlby, supra*, and the numerous authorities cited in brief of appellee's counsel.

But if the first point was decided otherwise, it cannot affect this case, because the title of the United States to the shore in question, to the line of ordinary high tide, became vested in the State on and by its admission as a State and could not be affected by any subsequent grant of the United States, if there had been such.—*Mobile v. Eslava, supra; Pollard v. Hagan, supra; Goodtitle v. Kibbe, supra; Shively v. Bowlby, supra.*

It is next insisted that the State could not grant the fee to the city of Mobile, and thereby divest itself of the trust under which the land was held. This court has decided that a deed by a trustee in violation of his trust nevertheless conveys the legal title and is valid in a court of law.—*Robinson v. Pierce*, 118 Ala. 273. But the grant in this case was not in fraud of the trust. On the contrary, it was made for the purpose of making it effective for the public good. The shores of tidewater in all the States are held in fee by the States subject only to the reservation and stipulation that such streams should forever be and remain public highways with the right in Congress to regulate commerce thereon. *Pollard v. Hagan, supra; Martin v. Waddell*, 16 Pet. 410; 4 Notes to U. S. Rep. 185 *et seq.* and 412 *et seq.* And it cannot be doubted that the State may convey the fee in such shore, subject, of course, to the paramount rights of the United States respecting navigation, and particularly so when the conveyance is in furtherance of the public interests.—*St. Anthony Falls Co. v. Commissioners*, 168 U. S. 360; *Packer v. Bird*, 37 U. S. 671; *Hagan v. Campbell*, 8 Port. 25; *Williams v. Mayor*, 105 N. Y. 433; *Langdon v. Mayor*, 93 N. Y. 129.

It is next insisted that the municpal corporation of Mobile was dissolved after the institution of this suit and that the suit cannot be further entertained. The modern doctrine is, that the identity of a municipal corporation is not changed by the repeal of its charter and the substitution of a new municipal organization for substantially the same inhabitants and locality.

When there is an alteration of a name, it may be convenient and proper for the pleadings to trace the change; but when the new organization bears the same name as the old, and the courts take judicial notice of the laws effecting the change, it is unnecessary to make any averment or obtain any order respecting the further prosecution of pending suits. Any authoritative appearance or step taken in the cause is the act of the new organization, which comes in, not by revivor, as in the case of representatives on the death of natural persons, but as the same party metamorphosed only in the external habilaments of organization and powers wrought by the new enactment.—1 Dillon on Mun. Corp., § 172 and notes; *Mobile v. Watson*, 116 U. S. 289; *Broughton v. Pensacola*, 93 U. S. 270; *Milner v. Pensacola*, 17 Fed. Cases, 407; *Girard v. Philadelphia*, 7 Wall. 1.

It is manifest from a reading of the act of February 11, 1879 (Acts, 1878-9, p. 381), that only such property as was possessed by the city of Mobile that was subject to the payment of its debts passed by the terms of the act to the commissioners as trustees for the bondholders. This property was trust property, and, therefore, was not subject to the debts of the city and was not affected by the act.

It is further insisted that ejectment will not lie for the recovery of the premises. There is nothing in this contention. No matter what the trust may be, the trustee or holder of the legal title may recover the possession from one who ousts him or claims to hold adversely. He may do this even against a *cestui que trust*. Without this right, he might be unable to perform his duties. And it is of no consequence that the land or a portion of it is servient to the right of the flow of water over it or of navigation thereon.—Newell on Ejectment, Chap. 2, §§ 20, 21, 22; *Hoboken v. Penn. R. R. Co.*, 124 U. S. 658; *Barney v. Keokuk*, 94 U. S. 324; *Hardin v. Jordan*, 140 U. S. 371; *Mobile v. Eslava*, *supra*.

The defendant offered evidence of adverse possession of the lands in controversy since the grant to the city

of Mobile in 1867, which was rejected. There was no error in this, since there can be no limitation against a municipal corporation as to property held for the public.—Dillon on Mun. Corp., § 675; *Webb v. Demopolis*, 95 Ala. 116; *Olive v. State*, 86 Ala. 94; *Miller v. State*, 38 Ala. 604. The presumption is that the property is public, and, indeed, the words of the grant make it such in this case. The wrong or error of collecting tax on public property on the same principle can create no estoppel against the assertion of the legal title, if it could have any effect on the right of such property. *Hawkins v. Ross*, 100 Ala. 463; *McLeod v. Bishop*, 110 Ala. 640; *Goodman v. Winter*, 64 Ala. 410. The plaintiff showed by the evidence introduced a valid legal title to the land sued for, unaffected by limitation or an estoppel of any character.

The defendant offered no evidence of title or possession which could have any operation to defeat the plaintiff's right of recovery. The supposed Spanish grant to so operate was never complete, and besides there was no proof of such a grant. The grant in 1836 by the United States cannot be construed to cover the land below high water mark along the shore, and; if it could, would be ineffective, because the title was divested out of the United States and vested in the State of Alabama on the admission of the State into the Union. The case of *Goodtitle v. Kibbe, supra,* is decisive of this point against the appellant. The title vested in the United States on the acquirement of the territory from France, and passed irrevocably to the State on its admission and could not be affected by any subsequent act of the United States.—*Pollard v. Hagan, supra.* The possession by the defendant after the grant to the city in 1867, could not be adverse, so as to put in operation the statute of limitations, so as to entitle the defendant to compensation for improvements. And as the plaintiff's declaration was good, and its paper title perfect, and no evidence was admitted or rejected which could legitimately affect the plaintiff's rights to recover the

shore land sued for below the high tide, there could be no error prejudicial to the appellant.

The defendant, however, insists that its third charge limiting the plaintiff's rights to recover the lands "covered by the description in the complaint" which is not now below high water mark should have been given. The argument is, that the description in the complaint takes the western line far inland, that is, west of the high water line. We do not find this is a fact. The description distinctly limits the western line, southwardly "along the high water mark," which would necessarily limit the line to the high tide. Besides, the charge limits the recovery to the present high tide line, which might be different from what it was when the grant was made or the suit commenced. There was no error, therefore, in the refusal of this charge.

Nor was there any error in the court's allowing public statutes and grants to be read in evidence, when they constituted the title papers of the party. They constitute facts in the case and are evidence in the strictest sense which must go to the jury. It is the proper practice to read them to the jury, as was done in *Mobile v. Eslava*. It is always allowable to prove any fact which the court knows judicially. And certainly no injury can possibly result where it is permitted to be done.

The authority of the attorney to bring the suit and represent the plaintiff was sufficiently shown.—*Williams v. Johnson*, 21 L. R. A. 848 and note; *Tullock v. Cunningham*, 1 Cow. 256; *Pixley v. Butts*, 2 Cow. 421; *Denton v. Noyes*, 5 Am. Dec. 237.

After the rendition of the judgment the defendant made a motion to retax the costs in respect to fees of certain witnesses subpoenaed by the plaintiff. This motion was denied and its refusal is here insisted upon as error. It may be conceded for the purposes of this appeal that the court committed an error in refusing to retax the costs, and yet this will not work a reversal of the judgment. The error, if committed, in nowise involves any ruling of the court upon the trial, but was subsequent to the rendition of the judgment and cannot be said to have induced its rendition or to have

otherwise infected it. We must, therefore, decline to consider it further.—*M. J. & K. C. R. R. Co. v. Owen*, 27 So. Rep. 612.

We have not deemed it necessary to notice in detail the many assignments of error since the principles announced by us involve the adjudication of all of them against the appellant. There is no error in the record, and the judgment is affirmed.