# SAMAHA *v.* MASON.

---

FRAUDULENT TRANSFERS; SALES; TENDER; EVIDENCE; DECLARATIONS.

1. A false financial statement by purchasers of goods, made in order to obtain credit, followed within about thirty days by a sale of their goods and letters to their creditors asking them to be patient and not to bring suit, as it would embarrass the debtors in an expected resumption of business, tends to show an intent to commit a fraud when the statement was made, and, under such circumstances, the extensive purchase on credit by the debtors of goods from other merchants about the same time is evidence of fraud.

2. The sale by retail merchants of their stock in bulk for an inadequate consideration, and within about thirty days of its purchase on credit, shows a fraudulent intent.

3. Where, after a payment has been made on account of the purchase price of goods, and they have been delivered, the vender demands a return of them, offering to return the money received, but the vendee, in the presence of his transferee, tells the vender that he has sold the goods, the vender may maintain an action against the transferee on the ground that the transfer was fraudulent, without a tender.

4. Where the vender of goods, to whom part of the purchase price has been paid, replevies a portion of the goods on the ground that the purchase was fraudulent, and it appears at the trial that the value of the goods replevied was in excess of the balance due the plaintiff, it is proper for the plaintiff to tender the excess to the defendant, and, on his refusal of the tender, to pay it into the registry of the court.

5. While the general rule is that declarations of persons in possession of personal property, explanatory of the character of their possession, are competent as part of the *res gestæ*, the rule does not go so far as to make such declarations as to the source of their title, or the manner in which they acquired the property, admissible.

6. Unsworn declarations made in his own interest by a party to a suit, before the suit is brought, and where he is called, sworn, and testifies at the trial to the same effect as to the alleged fact, should rarely, if ever, be considered admissible; and their exclusion is not reversible error.

No. 1631.   Submitted April 5, 1906.   Decided May 1, 1906.

HEARING on appeal by one of several defendants from a judgment of the Supreme Court of the District of Columbia upon a verdict of a jury in an action of replevin. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Jackson H. Ralston, Mr. Frederick L. Siddons, Mr. Eugene A. Jones,* and *Mr. William L. Ford* for the appellant.

*Mr. Henry W. Sohon* for the appellee.

Mr Justice DUELL delivered the opinion of the Court:

This appeal is from a judgment of the supreme court of the District of Columbia entered upon the verdict of a jury in a replevin suit brought by the appellees, Edmund T. Mason &

Co., for the recovery of goods claimed to have been fraudulently purchased by Haggar Bros & Daavid Company, who were made parties to the suit as brought, but who have taken no appeal.

The plaintiffs in their declaration claimed the return of 133 rugs, of the value of $1,947.50. A writ of replevin was issued, and the marshal took 90 rugs, valued at $1,327.50, which were turned over to the plaintiffs. All of the defendants filed pleas of not guilty, and issue was joined on the pleas.

On the trial it was shown that the plaintiffs carried on at New York city the business of importing silks and rugs. In the latter part of October, 1903, two members of the firm of Haggar Bros. & Daavid called on the plaintiffs and selected rugs, which were to be shipped to them upon payment of half the purchase price and furnishing a satisfactory signed statement. The purchasers sent a check for $500 and a signed statement which was not satisfactory. But upon the payment of an additional $300 the goods were shipped to them on November 5th. One month thereafter the plaintiffs received a letter from Haggar Bros. & Daavid Company stating that they had discontinued business, and had sold their stock and business to the defendant, Mansour Samaha. The plaintiffs were asked to be patient, and were told that nothing would be gained by bringing suit, as it would embarrass the firm in the expected resumption of business in the following February. The statement furnished showed assets of over $30,000, with liabilities of less than $4,000. It was also shown on the trial that Haggar Bros. & Daavid Company purchased from various merchants in New York city, between October 15th and November 27th, 1903, merchandise of the value of over $11,000, upon which they paid about $2,250. Within a few days after the shipment of the rugs they commenced to sell their stock at auction, the sales continuing from November 12th to November 28th.

After the receipt of the letter referred to, the plaintiffs sent their attorney to Washington, who went to the store which Haggar Bros. & Daavid Company had opened on November 12th, and there saw Haggar and Samaha. After stating that he represented the plaintiffs, he said that he desired to tender the money that had been paid, and to get the plaintiffs' goods. Hag-

gar replied that he had not got the goods, that he had sold the goods. Samaha testified that he purchased from Haggar Bros. & Daavid Company their stock on or about the 30th of November, for the sum of $10,679.60, and paid for the same in cash. He took possession of the goods, and the auction sales were resumed under the direction of Haggar and Samaha. A bill of sale was executed and recorded in the office of the recorder of deeds of the District of Columbia. An inventory is attached to the bill of sale.

The plaintiffs caused the rugs to be taken under a writ of replevin. The value of the goods taken was $1,327.50, which was $180 more than the amount due the plaintiffs at that time. Upon the trial, plaintiffs tendered this difference to the defendant Samaha, who rejected it; whereupon, with leave of the court, they paid that sum into the registry of the court.

Plaintiffs' salesman who had sold the rugs to Haggar Bros. & Daavid Company was present when the rugs were replevied, and identified them. Many of the rugs had the plaintiffs' tag on them; and he further states that he recognized them as the plaintiffs' rugs, as he had handled them many times. The defendant Samaha testified that some of the rugs taken were purchased by him from one Tavshanjian. It further appears that when Samaha purchased the Haggar Bros. & Daavid Company's stock he did not ask them to let him examine their books or to see their bills; and did not inquire whether the stock was consigned to them, or whether the goods had been paid for; and did not make any investigation to see if there was any chattel mortgage on the stock; and did not ask whether their business had been good or bad; nor ask them why they wanted to sell out.

Other evidence, and the proceedings of the court at the trial, so far as they may be material, will be considered in dealing with the assignments of error. These assignments may be treated under two heads: One relating to the refusal of the court to direct a verdict for the defendants at the close of the plaintiffs' case, and its refusal to direct a verdict on the whole evidence for the defendants and for defendant Samaha; the

other in excluding from the evidence the defendant Samaha's declaration as to his ownership of 43 rugs, made while he was in possession of the rugs and while they were being seized by the marshal.

We do not see how the court below could rightfully have directed a verdict for the defendants at the close of the plaintiffs' case. The evidence showed, or tended to show, all the facts requisite for the submission of the case to the jury, and it was for them to decide the weight to be given to it.

Haggar Bros. & Daavid Company had purchased rugs of the plaintiffs, and sold them to the defendant Samaha under circumstances which, if believed, established fraud upon the part of all the parties defendant connected with the transaction. The Haggar firm when they bought the rugs made a written statement which, in the light of their sale to Samaha and their letter of December 5, 1903, tends to prove that they must have had in mind the commission of a fraud. The evidence that they bought thousands of dollars worth of goods of other merchants during the month of November, upon which they made only slight payments, is another element bearing strongly against them. The sale of their stock in bulk for an inadequate consideration, and so soon after its purchase, also showed a fraudulent intent. *Walbrun* v. *Babbitt,* 16 Wall. 577, 21 L. ed. 489. There was sufficient evidence offered to warrant the submission of the question to the jury whether Samaha had knowledge of the fraud when he made the purchase, or, at least to put him on inquiry. *Walbrun* v. *Babbitt, supra;* *Morimura* v. *Samaha,* 25 App. D. C. 189; *Rindskopf* v. *Myers,* 87 Wis. 80, 57 N. W. 967.

It is strenuously urged, however, by the defendant Samaha, that plaintiffs, in order to maintain their action, should have returned or tendered the portion of the purchase price, and should have kept such tender good, and that they did neither. That this is the general rule where a vender brings an action in replevin is doubtless true, but there are exceptions to this general rule, as to almost all rules. The facts of a case have always to be considered in connection with any general rule. In

the case at bar the evidence offered on behalf of the plaintiffs below showed that they had received $800, at the time of the sale of the rugs, leaving a balance of about $1,100 due; that their attorney came to Washington, and demanded the goods of Haggar, and offered to return the money received; that Haggar told him he had not got the goods, having sold them. In such a case tender is useless, and the law does not require a vain thing to be done. *Bank of Columbia* v. *Hagner,* 1 Pet. 455, 7 L. ed. 219; *Potter* v. *Taggart,* 54 Wis. 395, 11 N. W. 678.

Haggar, the vendee of the rugs, was unable to return them, and therefore the plaintiffs did all that was required of them as a preliminary to bringing the action. Samaha was present, but seems to have remained silent. The authorities cited by appellant have been examined, but the facts of those cases differ from the facts in this case. So far as the general statements of law are concerned they are, with possibly one or two exceptions, correct. They are to the effect that if one would rescind a sale induced by fraud he must rescind *in toto,* or at least offer to do so; that he cannot rescind in part and affirm in part; that he cannot adopt so much of a voidable contract as is beneficial, and reject the part that is onerous. The plaintiffs, so far as they were able, attempted to put Haggar in the same position as he was before his purchase. They attempted to rescind *in toto.* They did not seek to divide the transaction. If anything of the kind occurred it was the fault of the defendants. Where the property sold is, for example, a horse, it is always possible to tender the amount paid and demand possession. Where, as in the present case, the property consists of a large number of articles which have been put into a store where auctions are daily held, it is often practically impossible by making a tender to obtain all the goods. It would seem absurd and unjust to require a vender to do more than offer to return the amount received upon return of all of the property sold, where, as in the present case, there were a large number of articles sold, and possession was not in the vendee, who said that he had sold them. Under the circumstances of the case the plaintiffs did all that

was required of them.  As before stated, when the plaintiffs
rested they had given all the testimony necessary to entitle
them to have the case submitted to the jury.

When all of the evidence was in, the court below would have
erred had it directed either a verdict for all of the defendants
or for the defendant Samaha.  If there was any question as
to Samaha's knowledge of the fraud in the purchase of the
rugs, or that there were evidences of suspicion sufficient to put
him upon inquiry, when plaintiffs rested, which warranted a
submission of the case to the jury, there was none after Samaha
had testified.  He admits that he made no investigation, although,
in fact and in law, there was sufficient to arouse the suspicion
of any prudent man.  It is unnecessary to repeat his testimony
on this point.

It appears that the value of the rugs replevied was in excess
of the amount due plaintiffs, and during the trial they tendered
to defendants such difference.  The tender being refused by
Samaha, they were permitted to pay the sum into the registry
of the court.  Failing, through no fault of their own, to rescind
the sale *in toto,* they replevied a portion of the goods sold.  The
value of the replevied rugs proving to be greater than they had
a right to take, it was incumbent upon them to return the over-
plus.  Some complaint seems to be made because they did not
take all the rugs they could find.  This criticism seems to be
rather hypercritical.  The first, second, and third assignments
of error are not, in our opinion, well-founded.

2.  It is urged by the fourth assignment of error that the
court below erred in excluding evidence of statements made by
the appellant Samaha when he was in possession of the rugs at
the time they were seized by the marshal.  It appears that one
Barker testified that Samaha was very much excited at the time
the rugs were seized, and said that he had bought them from
somebody else.  He was then asked what Samaha said when
he was excited by the taking of the rugs.  The question being
objected to, it was, after some discussion between the court and
counsel for the respective parties, from which it appears that
the plaintiffs were not present, ruled out and exception taken.

It is stated that the declarations related to the ownership of 43 of the rugs taken, and that such declarations were competent as part of the *res gestæ.* While it is undoubtedly true that the general rule is that declarations of persons in possession of personal property, explanatory of the character of their possession, are competent as part of the *res gestæ,* the rule does not go so far as to make such declarations as to the source of their title, or the manner in which they acquired the property, admissible. *Ray* v. *Jackson,* 90 Ala. 513, 7 So. 747; *McLeod* v. *Bishop,* 110 Ala. 640, 20 So. 130; *Bagnell* v. *Chemical Bank,* 76 Mo. App. 121.

Even conceding appellants' contention that the declarations are admissible to the full extent claimed, we fail to see how Samaha was harmed by the exclusion of the evidence. It appears that Samaha was called as a witness, and that he testified that he had bought the 43 rugs of another dealer, whose name he gave, and he also produced a bill from that party for 161 rugs, claiming the 43 rugs to be a part of that lot. Furthermore, the court instructed the jury that if part of the rugs were gotten of someone other than the plaintiffs, and were Samaha's, they should find for the defendants for 43 rugs and such damages for their detention as they might find. Samaha having declared under oath, when called as a witness at the trial, that the 43 rugs were obtained from a party other than the plaintiffs, it is difficult to comprehend how a similar unsworn statement made in his own interest could have had any weight with a jury, or how he was prejudiced by its exclusion. Unsworn declarations made in his own interest by a party to a suit, before such suit is brought, and where he is called, sworn, and testifies at the trial to the same effect as to an alleged fact, should rarely, if ever, be considered admissible; and their exclusion is not such an error as warrants a reversal of a verdict rendered against him. If his sworn statement is not believed by the jury, much less in his unsworn declaration worthy of credence.

We are of the opinion that there was no error in the rulings of the trial court, and that the judgment appealed from should be affirmed, with costs.                    *Affirmed.*